**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

JUAN SEBASTIÁN CARVAJAL-MUÑOZ,

    *Plaintiff*,

   v.

JACK CORY RAVENCAMP, JOHN DOES
NOS. 1–3, and JANE DOE NO. 1,

    *Defendants*.

Civil Case Number: 2:26-cv-00190-JCN

**PLAINTIFF'S UNOPPOSED MOTION FOR PERMISSION TO ISSUE A RULE 45
SUBPOENA TO PARAGON PROFESSIONAL SERVICES, LLC**

Plaintiff Juan Sebastián Carvajal-Muñoz, by his undersigned counsel, moves this Court for

permission to issue a subpoena to third-party contractor Paragon Professional Services, LLC, for

documents containing the names of two of unidentified Defendants in this case. *See* Fed. R. Civ.

P. 26(d)(1). The United States and Defendant Ravencamp do not oppose the relief requested,

subject to the conditions set forth at pages 2-3 below.

Mr. Carvajal-Muñoz is a civil engineer from Colombia living and working in Maine on a

valid H-1B visa. He alleges in his complaint that, on January 22, 2026, unidentified agents pulled

him over on his way to work without any reasonable basis, broke his window, arrested him, and

detained him for over twelve hours, despite proof that he had lawful immigration status. *See*

*generally* Dkt. 1. During and after the encounter, the four unidentified Doe Defendants alleged to

have participated in Mr. Carvajal-Muñoz's arrest and detention (named in the complaint as

Defendants John Does Nos. 1–3 and Jane Doe No. 1) took steps to conceal their identities. The

Doe Defendants drove in unmarked vehicles, wore hats and masks, did not wear identifying

uniforms, and did not wear name badges.[1] Undersigned counsel undertook a diligent investigation and were able to identify and serve the complaint on the one unmasked agent who participated in the stop and arrest (named in the complaint as Defendant Jack Cory Ravencamp), but were unable to identify by name the other four participating Defendants.

The government has been able to identify the two individuals who travelled in the vehicle with Defendant Ravencamp on the morning of January 22, 2026 (the individuals alleged to be Jane Doe No. 1 and John Doe No. 1), and Plaintiff has filed a consent motion for permission to issue a Rule 45 subpoena to the United States to obtain the names of those two individuals. However, the government has indicated that the two individuals who operated the white van (the individuals alleged to be John Does Nos. 2–3, *see* Dkt. 1, ¶¶ 82-93) are not government employees. Based on a diligent investigation, undersigned counsel believe that John Does Nos. 2–3 work for Paragon Professional Services, LLC ("Paragon"), the company with a sole-source contract with U.S. Immigration and Customs Enforcement (ICE) to provide transportation of detainees in Maine.[2]

---

[1] John Doe No. 2 and John Doe No. 3 wore hats and, although they were initially unmasked, put on masks as soon as they noticed a bystander recording them at the Kittery Police Station; they only removed their masks when they were inside the unmarked white van and could not be photographed or videorecorded.

[2] Publicly available information shows that Paragon was ICE's sole contractor for transporting detainees within ICE's Boston Area of Responsibility ("AOR")—including Maine—during the time of the events at issue here. *See, e.g.,* USASpending.gov, *Contract Summary: Parent Contract PPID 70CDCR23D00000001, Delivery Order PPID 70CDCR25FR0000087,* https://www.usaspending.gov/award/CONT_AWD_70CDCR25FR0000087_7012_70CDC R23D00000001_7012 (last visited May 1, 2026) (describing a task order that "provides funding for the transportation of ICE detainees for ICE Enforcement and Removal Operations (ERO) Boston Field Office" from May 28, 2025 through at least March 31, 2026 under a broader parent contract between DHS and Paragon); SAM.gov, *Contract Opportunity: Armed Transportation Services for the Boston Area of Responsibility, J&A-25-0106,* https://sam.gov/opp/6adc126994a74ff1a2ce161fb1dc0441/view (May 28, 2026) (below "Attachments/ Links" header, linking to a "Justification for Other than Full and Open Competition" PDF file showing that in May of 2025, federal contracting officials approved an ICE plan to transition from having ICE officers within the Boston AOR transfer detainees themselves to having Paragon do so, see page 3; that ICE effectuated this plan by expanding the geographical

Accordingly, Mr. Carvajal-Muñoz requests permission to issue a Rule 45 subpoena to Paragon for documents containing the names of the individuals who operated the white van on January 22, 2026 (the individuals alleged to be John Does No. 2–3). *See* Fed. R. Civ. P. 26(d)(1); **Exhibit A (Proposed Subpoena to Paragon).** The United States and Officer Ravencamp do not oppose the relief requested, provided it is subject to the same protective order the parties have proposed to the Court regarding the Rule 45 subpoena to the United States, and subject to the condition that Paragon cannot disclose any government documents without the United States' prior review and express consent. In addition, the government agrees that it will not redact or withhold the names of the individuals who were driving in the van to the extent contained in such documents, and agrees that they will review allegedly responsive government documents in Paragon's possession and decide whether to disclose them, withhold them, or redact them within three business days of receiving them from Paragon. These agreements apply only to early discovery conducted prior to the Rule 23(f) conference and the parties reserve all rights and objections with respect to the same or similar actions in later stages of the litigation.

---

scope of the parent contract referenced above to include the Boston AOR, see pages 1–2; and that ICE contracted for Paragon to provide these services in the Boston AOR without going through competitive bidding because it considered Paragon the "sole source" that could provide the required services at the time, see pages 1, 3); Me. Dep't of the Sec'y of State, *Paragon Professional Services, LLC: Foreign LLC Statement*, https://www.documentcloud.org/ documents/28089269-20250522-me-dept-of-secy-of-state-filing-foreign-llc-statement/ (May 22, 2025) (corporate filing certifying that Paragon would begin operating in Maine for the first time on June 1, 2025, to provide "[b]ase operations and other government contracting services" within the state). Other publicly available details about this ICE contract are consistent with details in Mr. Carvajal-Muñoz's case, including that the contractor regularly transfers detainees along a specific route between southern Maine and the ICE Field Office in Burlington, Massachusetts, and that the contractor assigns "two-person teams of transportation officers" to its vehicles. SAM.gov, *Request for Information: Multiple AOR Armed/Unarmed Guard Transportation Services, Notice ID 70CDCR25R00000019*, https://sam.gov/opp/ab9b06f593bd488dabec4a7293c79_afd/view (Aug. 27, 2025) (below "Attachments/Links" header, linking to (i) a "BOS Anticipated Transportation Routes" Excel file, see "Routes" tab, line 40, and (ii) a draft "Performance Work Plan" PDF file, see page 10).

**Factual Background**

Mr. Carvajal-Muñoz moved to Maine from Colombia on a student visa to earn his master's degree in civil engineering at the University of Maine. Dkt. 1, ¶ 2. He then accepted a job as a civil engineer, specializing in conducting soil and foundation analyses for bridge construction across Maine. *Id*. He was invited to stay in the United States under the H-1B visa program, which permits noncitizens to work legally in the U.S. if they can "perform services of exceptional merit and ability." *Id*.

On the morning of January 22, 2026, during the federal government's "Operation Catch of the Day" immigration crackdown in Maine, armed federal agents—Defendants Ravencamp, John Doe No. 1, and Jane Doe No. 2—abducted Mr. Carvajal-Muñoz while he was driving to work. *Id*. ¶ 3. They cut in front of Mr. Carvajal-Muñoz's car, bashed in his window, dragged him out of the car, handcuffed him, and left his car running in the middle of the street in downtown Portland. *Id.* Even though Mr. Carvajal-Muñoz offered proof of his lawful immigration status, the agents told Mr. Carvajal-Muñoz that his visa would be revoked and placed him in full-body shackles. *Id*. ¶ 4. Defendants John Doe Nos. 2 and 3 later drove Mr. Carvajal-Muñoz around in a white van, refused to release him, and instead loaded him on to a bus bound for the ICE field office in Burlington, Massachusetts, where, upon arrival, agents locked him in a windowless cell. *Id*. ¶¶ 5, 82-93. As abruptly as the agents had abducted him that morning, DHS released him in Burlington after 9 p.m. that night, leaving him to find his way back home. *Id*. The abduction profoundly harmed Mr. Carvajal-Muñoz. *Id*. ¶ 7. He continues to fear that he could again be racially profiled and unjustly arrested by federal agents. *Id*.

Mr. Carvajal-Muñoz asserts claims under the Maine Civil Rights Act and *Bivens* challenging Defendants' unconstitutional actions. *Id*. ¶¶ 6, 9; 5 M.R.S. § 4682; *Bivens v. Six*

4

*Unknown Named Agents*, 403 U.S. 388 (1971). First, Defendants stopped Mr. Carvajal-Muñoz without any reasonable suspicion that he was in the country unlawfully or had committed any other offense. *Id*. Second, Defendants arrested him without a warrant and without probable cause to believe he was removable, ignoring proffered proof that he had lawful immigration status. *Id*. Third, Defendants engaged in discrimination, arresting Mr. Carvajal-Muñoz for no reason other than his apparent race, skin color, or ethnicity. *Id*. Fourth, Defendants used unreasonable force and violence against Mr. Carvajal-Muñoz, pointlessly breaking his car window, dragging him from his car, and placing him in full-body shackles. *Id*. And fifth, independent of the unlawfulness of the seizure at its inception, the length of time Defendants kept Mr. Carvajal-Muñoz detained was likewise unreasonable and unconstitutional. *Id*. The Defendants' conduct violated the constitutional guarantees of equal protection and freedom from unreasonable search and seizure under the Fourth and Fifth Amendments. Mr. Carvajal-Muñoz seeks compensatory damages arising from the unlawful arrest and detention, and punitive damages to deter future unconstitutional conduct. *Id*. ¶ 7.

### Argument

Federal Rule of Civil Procedure 26(d)(1) permits early discovery by court order. "It is well established that plaintiffs are permitted to proceed against John Doe Defendants so long as discovery can be expected to uncover the defendant's identity." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1210 (D.C. Cir. 2020). Discovery to identify unnamed Defendants must occur early in the case, because the Defendants must be identified and served for the lawsuit to proceed against them. At this early stage, "the court is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant, but to determine whether the plaintiff should have the opportunity to name that defendant in the first place." *Id.* Courts thus routinely authorize early

discovery to identify Doe defendants, including in *Bivens* actions like this against unidentified law enforcement officers. *See, e.g.*, *Galarza v. Szalczyk*, No. 10-6815, 2011 WL 1045119, at *2–3 (E.D. Pa. Mar. 21, 2011); *Gutiérrez v. Martinez*, No. CV L-12-18, 2012 WL 13149228, at *2 (S.D. Tex. Mar. 12, 2012); *Boss v. Unknown Parties*, No. CV-14-02344-PHX-ROS, 2015 WL 12592106, at *6 (D. Ariz. Oct. 19, 2015). Indeed, in *Bivens* itself, the trial court ordered the United States attorney to identify "those federal agents who it is indicated by the records of the United States Attorney participated in the . . . arrest of the [petitioner]." *Bivens*, 403 U.S. 390, n.2 (quoting the district court's order). The First Circuit has expressly "condoned" the practice of naming a John Doe defendant when plaintiff is "unaware of the identity of the person who wronged her," "at least when discovery is likely to reveal the identity of the correct defendant and good faith investigative efforts to do so have already failed." *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 596 (1st Cir. 2011) (citing *Bivens*).

A plaintiff may pursue early discovery for "good cause," which courts evaluate based on the following five factors: "(1) a concrete showing of a prima facie claim of actionable harm; (2) specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) a central need for the subpoenaed information to advance the claim; and (5) the party's expectation of privacy." *Strike 3 Holdings, Inc. v. Doe*, 677 F. Supp. 3d 1, 4 (D. Mass. 2023) (internal citation omitted). All five factors weigh in favor of granting Mr. Carvajal-Muñoz's motion for early discovery.

**First**, the complaint makes a concrete prima facie showing of actionable harm. When analyzing this factor, courts emphasize that "[i]n the context of motions for expedited, court-ordered discovery to determine the identity of an anonymous defendant, 'the court is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant, but to determine

whether the plaintiff should have the opportunity to name that defendant in the first place.'" *Strike 3 Holdings, LLC v. Doe*, No. 3:23-CV-1525, 2024 WL 757083, at *5 (D. Conn. Feb. 23, 2024) (analyzing first factor, quoting *Strike 3 Holdings*, 964 F.3d at 1210). Courts do "not make any determination at this time as to whether plaintiff has stated a valid, plausible cause of action." *In re Strike 3 Holdings, LLC*, 22-CV-4596, 2023 WL 2652268, at *2 n.3 (E.D.N.Y. Mar. 27, 2023) (citing *Strike 3 Holdings*, 964 F.3d at 1210). Here, the complaint contains detailed allegations that Defendants racially profiled Mr. Carvajal-Muñoz, conducted a traffic stop of his car without reasonable suspicion that he is in the country unlawfully, bashed in his window, arrested him, shackled him, refused to release him even after instruction to do so, and detained him for over twelve hours even though it was immediately apparent that he had lawful immigration status, in violation of the Fourth and Fifth Amendments. Dkt. 1, ¶¶ 2–7. The Defendants' unlawful conduct caused profound psychological, physical, and emotional harm to Mr. Carvajal-Muñoz. *Id*. ¶ 7. His claims for constitutional violations by Defendants are actionable under *Bivens*, 403 U.S. 388, as well as the Maine Civil Rights Act, 5 M.R.S. § 4682. *Id*. ¶ 9. This factor weighs heavily in favor of allowing expedited discovery to determine the identities of the Doe Defendants.

**Second**, the specificity of Plaintiff's discovery requests weighs in his favor. Plaintiff proposes a limited Rule 45 subpoena to Paragon, the company with a sole-source contract with DHS to transport ICE detainees in Maine, for documents containing the names of the individuals who transported Plaintiff in a white van (Defendants John Does Nos. 2–3). *See* Exhibit A. "Courts regularly find that such specificity is sufficient because that information is needed to effectuate service and continue with the case." *Strike 3 Holdings, LLC v. Doe*, No. 1:25-CV-13556-JEK, 2025 WL 3546268, at *2 (D. Mass. Dec. 11, 2025) ; *Strike 3 Holdings*, 677 F. Supp. 3d at 5 (noting that requests for a defendant's name and address are "highly specific" and "reasonably likely to

lead to identifying information" that would make service possible (internal citations omitted));
*Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015) (citing the "common situation" for authorizing early discovery "in which a plaintiff alleging civil-rights violations by law-enforcement officers may be unable to identify the officers precisely, but may use other specific information known about the officers to tailor discovery requests to uncovering their full identity"). And of course, the requested information will all be discoverable in later stages of the case, so early discovery imposes no additional burden on the recipients of the discovery requests.

**Third**, Plaintiff does not have alternative means to identify the Doe Defendants. As detailed above, Defendants John Does Nos. 2–3 took affirmative steps to conceal their identity during the encounter. Undersigned counsel have undertaken a diligent investigation and have been able to identify the one unmasked agent as Jack Cory Ravencamp, but have been unable to uncover the identities of Defendants John Does Nos. 2–3, both of whom directly participated in the prolonged detention of Mr. Carvajal-Muñoz. The government has indicated that these two individuals are not government employees.

**Fourth**, there is a central need for the requested information to advance Plaintiff's claim. The discovery is targeted at identifying individual-capacity Defendants who directly participated in the unconstitutional unlawful detention of Plaintiff. This information is central to advancing the claim: "the Doe Defendants must be identified before this suit can progress further." *Galarza*, 2011 WL 1045119, at *3 (ordering early discovery to determine identity of Doe defendants in *Bivens* case); *Strike 3 Holdings*, 964 F.3d at 1207 ("In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, the only potential avenue for discovery is a court order under Rule 26(d)(1).").

**Fifth** and finally, the Doe Defendants' actions, taken in public, raise no legitimate privacy interests and should not, in any event, be shielded from disclosure to Plaintiff. Holding Defendants publicly accountable for constitutional violations is a profoundly important interest.

## Conclusion

For all the foregoing reasons, the Court should grant Plaintiff's motion for early discovery under Federal Rule of Civil Procedure 26(d).

Dated:  June 4, 2026                                    Respectfully submitted,

                                                       JUAN SEBASTIÁN CARVAJAL-MUÑOZ.

                                                       By his attorneys:

                                                       /s/ *Carol Garvan*
                                                       Carol Garvan
                                                       Zachary L. Heiden
                                                       Max Brooks
                                                       ACLU of Maine Foundation
                                                       PO Box 7860
                                                       Portland, Maine 04112
                                                       (207) 619-8687
                                                       cgarvan@aclumaine.org
                                                       zheiden@aclumaine.org
                                                       mbrooks@aclumaine.org

                                                       Benjamin R. Gideon
                                                       Taylor A. Asen
                                                       Rosalie B.C. Wennberg
                                                       Gideon Asen LLC
                                                       95 Main Street, No.5
                                                       Auburn, Maine 04210
                                                       (207) 206-8982
                                                       service@gideonasenlaw.com
                                                       rwennberg@gideonasenlaw.com

9

James Wagner
Law Office of James Wagner
343 Ocean House Road
Cape Elizabeth, Maine 04107
(207) 400-6038
jamiewagnerlaw@gmail.com

Scott Michelman (D.C. Bar No. 1006945)*
Laura Follansbee (D.C. Bar No. 1782046)*
ACLU Foundation of the District of Columbia
529 14th St. NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
smichelman@acludc.org
lfollansbee@acludc.org

Julie A. Murray (D.C. Bar No. 1003807)*
Matthew R. Segal (D.C. Bar No. 483486)*
American Civil Liberties Union Foundation
15th Street NW, Washington, DC 20005
(202) 675-2326
jmurray@aclu.org
msegal@aclu.org

*Counsel for Plaintiff*

*Admitted *pro hac vice*.

10