**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| JUAN SEBASTIÁN CARVAJAL-MUÑOZ,<br><br>Plaintiff,<br><br>v.<br><br>JACK CORY RAVENCAMP, ET AL.,<br><br>Defendants. | No. 2:26-cv-00190-JCN |

# DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND MEMORANDUM IN SUPPORT THEREOF

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Assistant Attorney General
Torts Branch

PAUL E. WERNER
Assistant Director, Torts Branch

*/s/ John B. F. Martin*
JOHN B. F. MARTIN
Senior Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4492
Email: john.b.martin@usdoj.gov

ANNA-DRAKE STEPHENS
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 255-7805
Email: anna-drake.stephens@usdoj.gov

# TABLE OF CONTENTS


**INTRODUCTION AND PROCEDURAL BACKGROUND** .......... 1

**BACKGROUND** .......... 3

**ARGUMENT** .......... 4

I. Plaintiff's State-Law Claims Do Not Fall Within the Westfall Act's *Bivens* Exception..... 4

A. Background of the Westfall Act. .......... 5

i. Precursors to the Westfall Act. .......... 5

ii. Enactment of the Westfall Act and the Supreme Court's Interpretation of the *Bivens* Exception. .......... 6

B. Federal Courts Have Uniformly Understood § 2679(b)(2)(A) to Apply Only to *Bivens* Claims, Not State-Law Claims. .......... 9

C. Plaintiff's State-Law Claims Are Not "Brought for a Violation of the Constitution." . 10

II. Plaintiff's FTCA Claims Should Be Dismissed for Failure to Exhaust. .......... 11

**CONCLUSION** .......... 12

# TABLE OF AUTHORITIES

Cases

*Andrus v. Glover Constr. Co.*,
446 U.S. 608 (1980) ........ 8
*Bennett v. City of Biddeford*,
364 F. Supp. 2d 1 (D. Me. 2005) ........ 11
*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) ........ 1, 10
*Black Lives Matter D.C. v. Trump*,
1:20-cv-01469-DJF, 2024 WL 3300158 (D.D.C. July 4, 2024) ........ 10
*Buchanan v. Barr*,
71 F.4th 1003 (D.C. Cir. 2023) ........ 10
*Carlson v. Green*,
446 U.S. 14 (1980) ........ 6
*Egbert v. Boule*,
596 U.S. 482 (2022) ........ 3
*Entz v. United States*,
2024 U.S. Dist. LEXIS 197767 (D. Me. Oct. 31, 2024) ........ 13
*Gindi v. Norton*,
216 F. Supp. 3d 199 (D. Mass. 2016) ........ 3
*Gutierrez De Martinez v. Lamagno*,
515 U.S. 417 (1995) ........ 7
*Harbury v. Hayden,*
522 F.3d 413 (D.C. Cir. 2008) ........ 3
*Hui v. Castaneda*,
559 U.S. 799 (2010) ........ 8, 9
*Johnson v. McCool*,
808 F. Supp. 2d 304 (D.D.C. 2011) ........ 5
*Levin v. United States*,
568 U.S. 503 (2013) ........ 5, 6
*McNeil v. United States*,
508 U.S. 106 (1993) ........ 12
*Mellein v. United States*,
Case No. 2:23-cv-7970-RGK-MAR, 2024 WL 1601802 (C.D. Cal. March 14, 2024) ........ 10
*Meshal v. Higgenbotham*,
804 F.3d 417 (D.C. Cir. 2015) ........ 6
*Osborn v. Haley*,
549 U.S. 225 (2007) ........ 3, 5
*Pearsons v. United States*,
Case No. 2:23-cv-7952-RGK-MAR, 2024 WL 1826472 (C.D. Cal. March 14, 2024) ........ 10
*Pompy v. Moore*,
Case No. 19-10334, 2024 WL 845859 (E.D. Mich. Feb. 28, 2024) ........ 10
*Quinonez v. United States*,
Case No. 22-cv-03195-WHO, 2023 WL 5663156 (N.D. Cal. Aug. 30, 2023) ........ 10

*Rise v. Bagshaw*,
Case No. 1:24-cv-2388-RCL, 2025 WL 1380478 (D.D.C. May 13, 2025)............................. 10
*United States v. Smith*,
499 U.S. 160 (1991)........................................................................................................ 5, 8
*Urizar-Mota v. United States*,
2026 U.S. App. LEXIS 8979 (1st Cir. Mar. 27, 2026)........................................................ 12
*Ward v. Schaefer*,
2017 U.S. Dist. LEXIS 105750 (D. Mass. July 10, 2017)...................................................... 3
*Westfall v. Erwin*,
484 U.S. 292 (1988)............................................................................................................ 7
*Ziglar v. Abbasi*,
582 U.S. 120 (2017)............................................................................................................ 3

Statutes

10 U.S.C. § 1089................................................................................................................ 6
22 U.S.C. § 817 (1982 ed.) .................................................................................................. 6
22 U.S.C. § 2702.................................................................................................................. 6
28 U.S.C. § 2401(b) .......................................................................................................... 12
28 U.S.C. § 2671.................................................................................................................. 7
28 U.S.C. § 2674.................................................................................................................. 7
28 U.S.C. § 2679(b) ......................................................................................................... 3,7
28 U.S.C. § 2679(b)(1) ....................................................................................................... 7
28 U.S.C. § 2679(b)(2)(A).......................................................................................... 5, 7-12
28 U.S.C. § 2679(b)-(e) (1970 ed.)................................................................................... 6, 7
28 U.S.C. § 2679(d) ............................................................................................................ 7
28 U.S.C. § 2679(d)(1) ........................................................................................................ 3
28 U.S.C. § 2679(d)(2) ........................................................................................................ 1
28 U.S.C. §§ 1346(b) (Federal Tort Cliams Act)................................................................. 1
28 U.S.C. §§ 2671 (Federal Tort Cliams Act)..................................................................... 7
28 U.S.C. §§ 2679 (Westfall Act) ........................................................................... 2-10, 12
28 U.S.C. § 2702.................................................................................................................. 6
38 U.S.C. § 416 (1970 ed.) .................................................................................................. 6
38 U.S.C. § 7316.................................................................................................................. 6
42 U.S.C. 2458a (1982 ed.).................................................................................................. 6
42 U.S.C. § 233.................................................................................................................... 6
42 U.S.C. § 233(a) ........................................................................................................... 8, 9
51 U.S.C. § 20137................................................................................................................ 6
Maine Civil Rights Act, 5 M.R.S. § 4681-4685……….... ....................................1, 2, 3, 5, 11, 12
Pub. L. 87-258...................................................................................................................... 6
Pub. L. 89-311...................................................................................................................... 6
Pub. L. 91-623...................................................................................................................... 6
Pub. L. 94-350...................................................................................................................... 6
Pub. L. 94-464...................................................................................................................... 6
Pub. L. 94-465...................................................................................................................... 6
Pub. L. 100-694.................................................................................................................... 7

Rules

Federal Rule of Civil Procedure 12(b)(1) ........................................................................... 1

Other Authorities

Cong. Rec. 134 Cong. 29414 (Oct. 7, 1988) (Sen. Charles Grassley)............................................ 9
H.R. 2659, 96th Cong. §1 (1979)...............................................................................6, 11
H.R. Rep. 700, 100th Cong., 2d Sess. 5-6 (1988 ........................................................... 10
*Legislation to Amend the Federal Tort Claims Act: Hearing Before Subcomm. on Admin. Law and Governmental Relations* of *H. Comm. on the Judiciary*, 100th Cong., 2d Sess. 78-79 (1988) (prepared statement of Deputy Asst. Att'y Gen. Robert L. Willmore).......................... 10
S, 695, 96th Cong. §1 (1979)............................................................................................ 6
S. 3314, 95th Cong. §2 (1978)........................................................................................... 6

Defendant United States of America respectfully moves this Court to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Contrary to the complaint's contention, the United States was properly substituted pursuant to 28 U.S.C. § 2679(d)(1) as the party defendant on Plaintiff Juan Sebastián Carvajal-Muñoz's ("Plaintiff") state-law claims under the Maine Civil Rights Act, which were automatically converted into claims against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2672. Even assuming *arguendo* that his claim is cognizable under the FTCA's waiver of sovereign immunity, Plaintiff failed to exhaust his administrative remedies, requiring dismissal of his FTCA claims. Accordingly, this Court should dismiss the claims against the United States.

## INTRODUCTION AND PROCEDURAL BACKGROUND

This lawsuit arises from federal law enforcement officers' stop of Plaintiff on suspicion of immigration violations in Portland, Maine, as well as his continued detention and transportation to other locations. *See generally* First Amended Complaint ("FAC"), ECF No. 33. Plaintiff asserts Fourth Amendment unlawful seizure and excessive force claims under *Bivens*[1] against United States Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") Deportation Officers Daisy I. Angulo, Jack Cory Ravencamp, and Javaka Y. Thompson. *See* FAC ¶¶ 166-86. Plaintiff asserts claims under the Maine Civil Rights Act, 5 Maine Revised Statutes ("M.R.S.") §§ 4681-4685, against those three officers based on the same allegedly unconstitutional conduct underlying his *Bivens* claims, adding an assertion that the conduct violated his equal protection rights under the Fifth Amendment. *See id*. ¶¶ 127-65.[2]

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] The operative sections of the Maine Civil Rights Act under which Plaintiff sues provide:

Plaintiff also brings a Fourth Amendment unlawful detention claim under *Bivens*, as well as related Maine Civil Rights Act claims, against ICE ERO Deportation Officers James Peters and John Stalnik. *See id*. ¶¶ 158-65, 181-86.

The United States has filed notice of substitution under the Westfall Act, 28 U.S.C. §§ 2679(b)-(d)(2), with respect to the state-law Maine Civil Rights Act claims against Officers Angulo, Peters, Ravencamp, Stalnik, and Thompson ("the Individual Defendants"). ECF No. 38, Substitution Notice. The notice was accompanied by a certification executed by the Attorney General's delegee certifying that the Individual Defendants were employees of the United States acting within the scope of office or employment at the time of the incidents out of which the claims arose. ECF No. 38-1, Certification. The effect of this certification was to automatically substitute the United States as the defendant with respect to Plaintiff's claims against the Individual Defendants under the Maine Civil Rights Act. *See* 28 U.S.C. § 2679(b)(1) & (d)(1); *see also Harbury v. Hayden,* 522 F.3d 413, 416 (D.C. Cir. 2008) (Kavanaugh, J.); *Gindi v. Norton*, 216 F. Supp. 3d 199, 204 (D. Mass. 2016); *cf. Ward v. Schaefer*, 2017 U.S. Dist. LEXIS

---

> 1-A. Interference with rights; private actions. A person whose exercise or enjoyment of the rights secured by the United States Constitution or the laws of the United States or of the rights secured by the Constitution of Maine or the laws of the State has been interfered with . . . may institute and prosecute . . . a civil action for legal or equitable relief whenever any person, whether or not acting under color of law:
>
> A. Violates section 4684-B; or
>
> B. Intentionally interferes or attempts to intentionally interfere with the exercise or enjoyment by any other person of those secured rights by:
>
> (1) Physical force or violence against a person;
>
> (2) Damage or destruction of property or trespass on property;
>
> (3) Threatening physical force or violence against a person;
>
> (4) Threatening damage or destruction of property or trespass on property; or
>
> (5) Engaging in any conduct that would cause a reasonable person to suffer emotional distress or to fear death or bodily injury to that person or to a close relation. For purposes of this subparagraph, "close relation" and "emotional distress" have the same meanings as in Title 17-A, section 210-A, subsection 2, paragraph B and paragraph D, respectively.

5 M.R.S. §§ 4682(1)(A)-(1)(A)(B)(5).

105750, at *4-8 (D. Mass. July 10, 2017) (upon certification, substituting United States for individual defendants under Westfall Act on claims under Massachusetts Civil Rights Act based on alleged due process violations, while denying substitution on claims directly under Constitution pursuant to *Bivens*).[3] Therefore, assuming *arguendo* any of the state-law claims could be considered viable at all or within the scope of the FTCA's waiver of sovereign immunity, the state-law claims were converted into putative FTCA claims against the United States. And because the Westfall Act makes the FTCA the exclusive remedy for claims within its ambit, *see* 28 U.S.C. § 2679(b), the Act's substitution and exclusive-remedy provisions operated in tandem to render the Individual Defendants immune from the state-law claims upon substitution. *See Osborn v. Haley*, 549 U.S. 225, 229-230 (2007).[4]

## BACKGROUND

As explained in the Individual Defendants' Motion to Dismiss, Portland, Maine, has a substantial immigrant population and operates as a sanctuary jurisdiction that limits cooperation with federal immigration enforcement. *See* Individual MTD, ECF No. 39 at 2-3. In January 2026, the U.S. Department of Homeland Security ("DHS") initiated "Operation Catch of the Day," a large-scale immigration enforcement operation in Maine that targeted people who were unlawfully in the country and had significant criminal records. *See* FAC ¶ 19 n.1, 20-29. On the morning of January 22, Plaintiff, a foreign-born non-citizen holding an H-1B work visa, was driving on Pearl Street near a port of entry in Portland. *See* FAC ¶¶ 10, 36 n.13, 44; Individual MTD at 4-5. Officers Angulo, Ravencamp, and Thompson, who allegedly knew Plaintiff's

[3] *See also Ward v. Schaefer*, Case No. 1:16-cv-12543 (D. Mass.), ECF No. 1-1, Complaint.

[4] The Individual Defendants moved to dismiss the *Bivens* claims against them based on the claims' failure to pass the two-part test of *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and *Egbert v. Boule*, 596 U.S. 482 (2022), and based on qualified immunity. *See generally* ECF No. 39, Individual Defendants' Motion to Dismiss ("Individual MTD").

appearance, name, and apparent Hispanic ethnicity, pulled over his vehicle. *See* FAC ¶¶ 44, 61. After an exchange in which Plaintiff failed to comply with Thompson's directive to exit the vehicle, Thompson gained access to Plaintiff's vehicle by breaking a window and removed Plaintiff, while Ravencamp pointed a taser at him. *See id*. ¶¶ 44-46, 48-49, 51-52. The officers handcuffed Plaintiff, put him in their vehicle, and took him to a parking lot. *See id*. ¶¶ 63-65. There, they completed some paperwork and checked Plaintiff's immigration status, which revealed some information indicating he possessed an H-1B visa. *See id*. ¶¶ 65-68. Angulo, Ravencamp, and Thompson transferred Plaintiff to another van operated by different individuals. *See id*. ¶¶ 74-75. Thereafter, Plaintiff was transferred to a vehicle operated by Officers Peters and Stalnik, who had a discussion with Plaintiff about his requested drop-off location, drove him to Biddeford, and turned him over to non-party officers, who eventually took him to an ICE facility in Massachusetts, where he was released. *See id*. ¶¶ 76-79, 82-93, 96, 102-08, 112.

## ARGUMENT

### I. Plaintiff's State-Law Claims Do Not Fall Within the Westfall Act's *Bivens* Exception.

In his complaint, Plaintiff alludes to a challenge to the United States' substitution and the Individual Defendants' concomitant immunity under the Westfall Act. Central to this challenge is 28 U.S.C. § 2679(b)(2)(A), which states that the Westfall Act's immunity provisions do not apply to "a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). Suggesting that substitution and immunity would be invalid, the complaint alleges that Plaintiff's Maine Civil Rights Act claims fall within this immunity exception because they are "claims for constitutional violations under the Maine Civil Rights Act" and are therefore "brought for a violation of the Constitution

of the United States" within the meaning of § 2679(b)(2)(A). FAC ¶¶ 120-22.[5] But the Supreme Court has read § 2679(b)(2)(A) to except only *Bivens* claims from the Westfall Act, *see, e.g., United States v. Smith*, 499 U.S. 160, 166-67 (1991). No court has ever endorsed Plaintiff's novel reading of this 38-year-old statute. This Court should decline to be the first.

**A. Background of the Westfall Act.**

The history of the Westfall Act demonstrates that Congress intended to eliminate federal employees' personal liability for state-law claims related to their federal duties and crafted a limited exception to its immunity provisions for *Bivens* claims only.

**i. Precursors to the Westfall Act.**

"Originally, the FTCA afforded tort victims a remedy against the United States, but did not preclude lawsuits against individual tortfeasors." *Levin v. United States*, 568 U.S. 503, 507 (2013). Instead, plaintiffs "could sue as sole or joint defendants federal employees alleged to have acted tortiously in the course of performing their official duties." *Id.* But over the decades, Congress acted to shield various classes of federal employees from the threat of personal liability, including via Westfall Act precursors like the Federal Drivers Act and a series of laws eliminating some forms of liability for a variety of federal medical personnel. *See* Pub. L. 87-258, 75 Stat. 539 (previously codified as 28 U.S.C. § 2679(b)-(e) (1970 ed.); Pub. L. 89-311, 79 Stat. 1156, 38 U.S.C. § 416 (1970 ed.), now codified at 38 U.S.C. § 7316; Pub. L. 91-623, 84 Stat. 1870, 42 U.S.C. § 233; Pub. L. 94-350, 90 Stat. 828, 22 U.S.C. § 817 (1982 ed.), now

[5] The complaint, filed prior to the United States' notices of substitution and scope certification, was not a proper vehicle to challenge the substitution. Because a certification's validity depends on "what the court finds" and not "what the complaint alleges," *Osborn*, 549 U.S. at 252, the filing of the complaint, coupled with the United States' filing of the certification, does not trigger an automatic judicial review process. Plaintiff must challenge the certification via motion. *See, e.g.*, *Johnson v. McCool*, 808 F. Supp. 2d 304, 306 (D.D.C. 2011). While the United States seeks to avoid any premature adverse findings as to the validity of the certification by responding to the complaint's assertions here, it does not waive the requirement of a proper motion challenging the certification. In the event this Court decides to determine the validity of the scope certification prior to the filing of a motion, it should uphold the certification and deny any subsequent motion as futile.

codified at 22 U.S.C. § 2702; Pub. L. 94-464, 90 Stat. 1985, now codified at 10 U.S.C. § 1089; Pub. L. 94-465, 90 Stat. 1988, 42 U.S.C. 2458a (1982 ed.), now codified at 51 U.S.C, § 20137; *see also Levin*, 568 U.S. at 507 n.2.

While expanding federal employees' immunity from state-law claims, Congress opted to leave *Bivens* alone. Specifically, after the Supreme Court's 1971 decision in *Bivens*, a number of bills were introduced in Congress at the Department of Justice's behest that would have made suit under the FTCA the exclusive remedy for persons injured by conduct of federal officers that was alleged to have violated the plaintiff's constitutional rights; none, however, were ever enacted. *See, e.g., Carlson v. Green*, 446 U.S. 14, 20 (1980) (citing S. 695, 96th Cong., 1st Sess. (1979); H.R. 2659, 96th Cong., 1st Sess. (1979); S. 3314, 95th Cong., 2d Sess. (1978)); *Meshal v. Higgenbotham*, 804 F.3d 417, 427 (D.C. Cir. 2015) (noting that in 1973, Congress rejected a Department of Justice proposal to amend the FTCA to provide for substitution of United States as defendant in certain tort suits against federal officers, including those raising constitutional claims). Congress's continuous expansion of immunity from state-law claims via Westfall Act precursors and its declination of action on *Bivens* claims heralded the approach it would later take in the Westfall Act: provide broad immunity from individual-capacity damages claims established under state law, but decline to extend statutory immunity to *Bivens* actions established under federal law.

**ii. Enactment of the Westfall Act and the Supreme Court's Interpretation of the *Bivens* Exception.**

The Westfall Act was enacted in 1988 in the wake of the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988), which required a federal employee to show that his conduct was both in the scope of employment and in furtherance of a discretionary function to obtain immunity from state tort suits. *Westfall*, 484 U.S. at 299-300; *see also* Pub. L. 100-694,

102 Stat. 4563, codified at 28 U.S.C. §§ 2671, 2674, 2679(b) & (d). As explained in *Gutierrez De Martinez v. Lamagno*, 515 U.S. 417, 425-26 (1995), the purpose of the Westfall Act was to override the Supreme Court's ruling in *Westfall* by eliminating *Westfall*'s discretionary function requirement and making scope of employment the only benchmark of the individual employee's immunity. *See Gutierrez de Martinez*, 515 U.S. at 425-26. The Act did this by making the remedy against the United States under the FTCA for injuries caused by the negligence or wrongdoing of any federal employee "while acting within the scope of his office or employment" "exclusive of *any other civil action or proceeding* for money damages by reason of the same subject matter *against the employee* whose act or omission gave rise to the claim." 28 U.S.C. § 2679(b)(1) (emphasis added). The statute goes on to provide that "[*a*]*ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded*." *Id.* (emphasis added).

Congress took care, however, to ensure that this expansive language would not be read to confer immunity on federal employees against whom *Bivens* suits were brought. Congress did so by adopting § 2679(b)(2)(A), which carved out *Bivens* claims from the broad language of § 2679(b)(1) that otherwise made the remedy against the United States under the FTCA exclusive of "any other civil action" against the employee "by reason of the same subject matter." Had Congress not enacted § 2679(b)(2)(A), that language would have been broad enough to shield federal employees from *Bivens* claims. Hence the exception was meant to clarify that *Bivens* claims were unaffected. But it was not intended to preserve any individual-capacity state-law claims against federal employees, which the entire Act was designed to foreclose.

The Supreme Court has understood that § 2679(b)(2)(A) is a limited *Bivens*-only exception to Westfall Act immunity, as shown by its decision in *United States v. Smith*, 499 U.S. 160 (1991). In describing § 2679(b)(2), the *Smith* Court said that this provision "declared that the FTCA is not the exclusive remedy for torts committed by Government employees within the scope of their employment when the injured plaintiff brings: (1) a *Bivens* action, seeking damages for a constitutional violation by a Government employee; or (2) an action under a federal statute that authorizes recovery against a Government employee." *Id*. at 166-67. Declining to infer the existence of a third exception to the Westfall Act's exclusivity provision, the Court noted that where Congress explicitly enumerates exceptions to a general prohibition, additional exceptions are not to be implied absent evidence of a contrary legislative intent. *Id*. at 167 (citing *Andrus v. Glover Constr. Co*., 446 U.S. 608, 616-17 (1980)); *see also Smith*, 499 U.S. at 173 ("When Congress wanted to limit the scope of immunity available under the [Westfall] Act, it did so expressly, as it did in preserving employee liability for *Bivens* actions and for actions brought under a federal statute authorizing recovery against the individual employee.").

The Supreme Court applied similar reasoning in *Hui v. Castaneda*, 559 U.S. 799, 806-07 (2010), which concerned 42 U.S.C. § 233(a). There, the Court compared § 233(a) to the Westfall Act and concluded that § 233(a) barred *Bivens* actions against Public Health Service personnel for performance of medical duties because § 233(a) lacked what the Westfall Act expressly included: "[t]he Westfall Act's exception *for Bivens claims*," the absence of which was "powerful evidence that Congress did not understand the exclusivity provided by § 2679(b)(1)—or the substantially similar language of § 233(a)—to imply such an exception." *Hui*, 559 U.S. at 807 (emphasis added).

The Supreme Court's characterization of 28 U.S.C. § 2679(b)(2)(A) as "the Westfall Act's *Bivens* exception," *Hui*, 559 U.S. at 809-10, is entirely consistent with how the Westfall Act's proponents conceptualized the statute when considering the bill that ultimately was enacted. The bill's sponsors, as well as the Department of Justice representative who testified in support of the legislation, all explained that bills that had been proposed in the wake of *Bivens* to make the remedy under the FTCA the exclusive remedy for violations of the Constitution had been "controversial," and that the Westfall Act would have no effect on *Bivens* claims.[6] Thus, legislative history and Supreme Court precedent confirm the exception is for *Bivens* claims only, not state statutory claims stemming from allegedly unconstitutional conduct.

### B. Federal Courts Have Uniformly Understood § 2679(b)(2)(A) to Apply Only to *Bivens* Claims, Not State-Law Claims.

[6] *See, e.g.*, 134 Cong. 29414 (Oct. 7, 1988) (Sen. Charles Grassley) ("Mr. President, I would like to emphasize that this bill does not have any effect on the so-called *Bivens* cases or constitutional tort claims. Although this too is an area of concern to me—and I have introduced corrective legislation in the past—the bill that we pass today has no impact on these cases, which can continue to be brought against individual Government officials."). Similarly, the prepared statement of the Department Justice representative who testified before the House Judiciary Committee stated:

> [This bill] would apply only to cases alleging injury caused by ordinary common law tortious conduct. . . . The term does not include, and [the bill] is not intended to apply to, cases that allege violations of constitutional rights, or what commonly are known as *Bivens* cases. . . .
>
> As this Subcommittee is aware, since *Bivens* was decided in 1971, the Department of Justice, under both Democratic and Republican Administrations, consistently has pursued legislation which would make a suit under the FTCA the exclusive remedy for persons injured by conduct alleged to violate constitutional rights. We recognize, however, that such legislation always has been somewhat controversial because of its constitutional rights dimension. And while our position on a *Bivens* bill remains the same, litigating *Bivens* cases will not much change as a result of *Westfall*, which changed the law only as it concerns common law torts.

*Legislation to Amend the Federal Tort Claims Act: Hearing Before Subcomm. on Admin. Law and Governmental Relations* of *H. Comm. on the Judiciary*, 100th Cong., 2d Sess. 78-79 (1988) (prepared statement of Deputy Asst. Att'y Gen. Robert L. Willmore). Finally, in favorably reporting the bill, the House Judiciary Committee described the bill as providing that "the exclusive remedy expressly does not extend to so-called constitutional torts. *See Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Courts have drawn a sharp distinction between common law torts and constitutional or *Bivens* torts." H.R. Rep. 700, 100th Cong., 2d Sess. 5-6 (1988).

In the 38 years that have passed since the Westfall Act's enactment in 1988, federal courts have uniformly read the exception in § 2679(b)(2)(A) to apply only to *Bivens* claims. And while some plaintiffs have cited a concurrence opinion in the D.C. Circuit to argue that the exception should extend to state-law claims involving allegedly unconstitutional conduct, *see Buchanan v. Barr*, 71 F.4th 1003, 1012-1018 (D.C. Cir. 2023) (Walker, J., concurring), the courts have uniformly rejected those efforts and found that the exception does not apply to claims like Plaintiff's here. *See Rise v. Bagshaw*, Case No. 1:24-cv-2388-RCL, 2025 WL 1380478 at *12-17 (D.D.C. May 13, 2025); *Mellein v. United States*, Case No. 2:23-cv-7970-RGK-MAR, 2024 WL 1601802 at *5 (C.D. Cal. March 14, 2024); *Black Lives Matter D.C. v. Trump*, Case No. 1:20-cv-01469-DJF, 2024 WL 3300158 at *4-10 (D.D.C. July 4, 2024); *Pearsons v. United States*, Case No. 2:23-cv-7952-RGK-MAR, 2024 WL 1826472 at *5 (C.D. Cal. March 14, 2024); *Pompy v. Moore*, Case No. 19-10334, 2024 WL 845859 at *12 (E.D. Mich. Feb. 28, 2024); *Quinonez v. United States*, Case No. 22-cv-03195-WHO, 2023 WL 5663156 at *2-3 (N.D. Cal. Aug. 30, 2023). This Court should follow suit.

### C. Plaintiff's State-Law Claims Are Not "Brought for a Violation of the Constitution."

The statutory text of § 2679(b)(2)(A) is clear that the immunity exception applies only to federal constitutional tort claims, *i.e.*, *Bivens* claims. Even if one were to assume that the statute is ambiguous, Plaintiff's state statutory claims are not "brought for a violation of the United States Constitution" within the meaning of 28 U.S.C. § 2679(b)(2)(A). Instead, it is plain on the face of the operative complaint that these claims are brought for vindication of state-law rights.

Plaintiff himself characterizes his statutory claims as claims for interference with constitutional rights "in violation [of] the Maine Civil Rights Act," FAC ¶ 138, not the Constitution itself, and observes that it is "the Maine Civil Rights Act" which "provides *a state-*

*law cause of action* for violations of the federal constitution by federal officers," *id*. ¶ 9 (emphasis added); *see also id*. ¶ 122 (alleging that the Maine Civil Rights Act "provides *a state-law remedy*" for constitutional violations) (emphasis added). Those allegations stem from Plaintiff's recognition of the unavoidable reality that, *Bivens* aside, the officers' alleged violation of the Constitution itself does not inherently give rise to a cause of action for damages. Indeed, Plaintiff would have no claim without the concomitant violation of the state statute. As a result, Plaintiff has not brought his claim for a violation "of the Constitution" itself, but for a violation of the Maine Civil Rights Act.[7] That remains true where a statutory cause of action may incorporate as an element conduct that violates the Constitution, for such a claim still depends on state law for its definition of any legal violation and right to relief. That is especially so here, where one can commit an actionable wrong under the Maine Civil Rights Act, without violating the Federal Constitution, by violating a state statute instead. *See* 5 M.R.S. § 4682(1-A) (proscribing, among other things, interference with "the rights secured by the Constitution of Maine or the laws of the State").[8]

In sum, because Plaintiff's state-law claims do not fall within § 2679(b)(2)(A)'s exception to the Westfall Act's immunity provisions, the United States was properly substituted for the Individual Defendants on those claims.

## II. Plaintiff's FTCA Claims Should Be Dismissed for Failure to Exhaust.

[7] The Maine Civil Rights Act underscores this by requiring suits under the Act to be instituted in a state court, *see* 5 M.R.S. § 4682(2), presumably because claims under the Act are brought for a violation of state law, not for a violation of the Constitution, and therefore do not fall within a federal court's federal question jurisdiction, unlike a federal constitutional claim. *See Bennett v. City of Biddeford*, 364 F. Supp. 2d 1, 3 n.2 (D. Me. 2005) ("The Court notes that 5 M.R.S.A. § 4682(2) does not give this Court the authority to adjudicate a case brought under the Maine Civil Rights Act without an independent basis of federal jurisdiction.").

[8] The Maine Civil Rights Act's application to only a subset of constitutional and statutory violations accomplished by force, threat, or similar conduct, *see* 5 M.R.S. §§ (1)(A)(B)(1)-(1)(A)(B)(5), further demonstrates that claims under the Act turn on unique state-law parameters for liability. Such claims are not coextensive with, and do not arise from, the Constitution itself.

Under 28 U.S.C. § 2401(b), a claimant cannot pursue an FTCA claim unless it is "presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). The statute specifies that when the claimant fails to satisfy this presentment requirement, the claim against the United States "shall be forever barred." *Id*. Thus, the presentment requirement "is jurisdictional and 'bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.'" *Urizar-Mota v. United States*, 2026 U.S. App. LEXIS 8979, at *13 (1st Cir. Mar. 27, 2026) (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)). Here, Plaintiff failed to satisfy that requirement because he does not allege that he presented his current claims in writing to the relevant officers' employing agencies for potential settlement, nor is there any indication in the record that he has done so. Accordingly, his claims should be dismissed for lack of jurisdiction. *See Entz v. United States*, 2024 U.S. Dist. LEXIS 197767, at *5 (D. Me. Oct. 31, 2024).

## CONCLUSION

For the reasons stated above, the United States was properly substituted for the Individual Defendants under the Westfall Act. Plaintiff's state-law claims, which were converted into FTCA claims against the government upon substitution, should be dismissed for lack of exhaustion.

Dated: September 25, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JONATHAN D. GUYNN
Deputy Assistant Attorney General

Torts Branch

PAUL E. WERNER
Assistant Director, Torts Branch

*/s/ John B. F. Martin*
JOHN B. F. MARTIN
Senior Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4492
Email: john.b.martin@usdoj.gov

*/s/ Anna-Drake Stephens*
ANNA-DRAKE STEPHENS
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 255-7805
Email: anna-drake.stephens@usdoj.gov

*Counsel for Defendant United States*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2026, the foregoing **United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Memorandum in Support Thereof** was filed electronically and served upon all counsel of record through ECF/CM.

*/s/ John B. F. Martin*
JOHN B. F. MARTIN
Senior Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044-7146
Tel: (202) 616-4492
Email: john.b.martin@usdoj.gov

*Counsel for Defendant United States*