UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JUAN SEBASTIÁN CARVAJAL-MUÑOZ,<br><br>Plaintiff,<br><br>v.<br><br>JACK CORY RAVENCAMP, *et al.*,<br><br>Defendants. | Civil No. 2:26-cv-00190-LEW |

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO WESTFALL ACT CERTIFICATION AND OPPOSITION TO FEDERAL GOVERNMENT'S MOTION TO DISMISS

## TABLE OF CONTENTS


INTRODUCTION....................1

BACKGROUND....................2

ARGUMENT....................2

I. The government's certification is subject to challenge....................2

II. The Westfall Act does not bar civil rights claims brought for violations of the U.S. Constitution.................... 3

A. The plain text of the Westfall carveout encompasses any civil action brought for violations of the U.S. Constitution....................4

B. The history of state and local law actions against federal officers to vindicate constitutional rights confirms the plain meaning of the Westfall carveout's text....7

C. Statutory canons confirm the plain meaning of the Westfall carveout to preserve state and local law actions for constitutional violations....................8

D. Imposing an atextual "*Bivens*-only" limitation on the Westfall carveout would present serious constitutional problems....................10

E. The government's atextual reading of the Westfall carveout fails....................13

III. Sebastián's MCRA claims are brought for violations of the U.S. Constitution...........16

CONCLUSION....................20

## INTRODUCTION

Juan Sebastián Carvajal-Muñoz ("Sebastián") brings this action against five individual employees of the federal government, alleging that those employees violated his rights protected by the Fourth and Fifth Amendments to the United States Constitution. This action asserts no claims under the Federal Tort Claims Act ("FTCA"). Nevertheless, the government requests certification under the Westfall Act, 28 U.S.C. § 2679, seeking to substitute itself for its employees—even though the plain language of the Westfall Act's carveout from the FTCA's coverage expressly preserves *all* claims against individual officers "brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A) ("Westfall carveout"). Because all claims in this civil action are brought for violations of the U.S. Constitution, the Court should reject the government's certification under the Westfall Act, ECF No. 38, 38-1, and deny the government's concurrent motion to dismiss Sebastián's Maine Civil Rights Act ("MCRA") claims, ECF No. 40 ("Mtn.").

Sebastián's argument proceeds in three steps. *First*, as a threshold matter, the government's Westfall Act certification is subject to judicial review. *Second*, the government misreads the Westfall Act, on which its certification relies: Although the Act allows the United States to substitute for its employees as a defendant in certain tort suits, the plain language of the Westfall carveout expressly preserves *all* civil actions against individual officers "brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). *Third*, Sebastián's MCRA claims for violations of his Fourth and Fifth Amendment rights fit squarely into the plain language of the Westfall carveout for civil actions "brought for a violation of the Constitution of the United States," § 2679(b)(2)(A), because a violation of the U.S. Constitution is an element of each MCRA claim. The government's effort to limit the Westfall carveout to claims asserted under *Bivens v.*

*Six Unknown Named Agents*, 403 U.S. 388 (1971), ignores the plain language and would rewrite the statutory text. Accordingly, this Court should reject the government's certification and refuse to dismiss Sebastián's MCRA claims against the individual defendants.

## BACKGROUND[1]

Sebastián's Amended Complaint alleges that five individual employees of the federal government violated his rights under the Fourth and Fifth Amendments to the U.S. Constitution by subjecting him to a suspicionless stop, warrantless arrest, excessive force, and prolonged detention for no reason other than his race, skin color, or ethnicity. Am. Compl., ECF No. 33 ("Compl."). Counts I–V allege violations of the Fourth and Fifth Amendments to the U.S. Constitution under the MCRA, 5 M.R.S. § 4682, and Counts VI–IX allege violations of the Fourth Amendment to the U.S. Constitution under *Bivens*. Significantly, this action does not allege any FTCA claims against any of the individual government employees or against the government itself.[2]

## ARGUMENT

### I. The government's certification is subject to challenge.

The mere fact that the government seeks to substitute the United States for the individual defendants by admitting that the employees were acting in the course and scope of employment does not require automatic substitution when the statutory prerequisites are lacking. Courts have a role in policing this practice, because the government's Westfall Act certification "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee." *De Martinez v. Lamagno*, 515 U.S. 417, 429–30, 434 (1995); *Bergeron v. Henderson*,

---

[1] Sebastián incorporates by reference the factual background in his concurrently filed opposition to the individual Defendants' motion to dismiss for failure to state a claim, ECF No. 48.

[2] Sebastián has filed an administrative notice of claim under the FTCA, but the agency has not adjudicated the claim yet, and therefore it is not (and could not be) at issue here.

47 F. Supp. 2d 61, 64–65 (D. Me. 1999) (certification "not the 'final word'" on the scope of federal employment (citing *De Martinez*, 515 U.S. at 434)); *accord Lyons v. Brown*, 158 F.3d 605, 607 (1st Cir. 1998). As the government concedes, certification is instead subject to a plaintiff's challenge. *See* Mtn. at 5 n.5. And a challenge to Westfall certification can be brought when the government seeks to substitute itself as a defendant in civil actions brought for violations of the U.S. Constitution, because the Westfall carveout does not permit certification of constitutional claims. *See Harbury v. Hayden*, 522 F.3d 413, 418 n.2 (D.C. Cir. 2008) (Kavanaugh, J.) (explaining that a certification would not be effective as to "*Bivens* claims against individual federal officials").

## II. The Westfall Act does not bar civil rights claims brought for violations of the U.S. Constitution.

Sebastián's civil rights claims fall squarely within the Westfall carveout for "civil actions" "brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A). Therefore, the Westfall Act does not immunize the individual officers against Sebastián's MCRA claims, nor does it authorize FTCA substitution.

Congress enacted the FTCA in 1946 to waive the United States' sovereign immunity for certain torts committed by federal employees in the course of their employment. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475–76 (1994); 28 U.S.C. § 1346(b). As originally enacted, the FTCA did not bar state law tort claims against individual employees of the federal government. In *Westfall v. Erwin*, 484 U.S. 292 (1988), the Supreme Court confirmed that federal employees acting within the scope of their employment could be individually liable for acts and omissions that did not qualify for "discretionary function" immunity. *Id.* at 293–95. Congress responded by enacting the Federal Employees Liability Reform and Tort Compensation Act, commonly known as the Westfall Act, to overturn the *Westfall* decision. Pub. L. No. 100–694, 102 Stat. 4563 (1988). The Westfall Act made the FTCA the exclusive remedy for damages claims against federal employees, § 2679(b)(1),

but subject to an important carveout: The Westfall Act's exclusivity provision "does not extend or apply to a civil action against an employee of the Government [] which is brought for a violation of the Constitution of the United States," 28 U.S.C. § 2679(b)(2)(A).

As detailed below, the plain text of the Westfall carveout preserves any "civil action" "brought for a violation of the Constitution," § 2679(b)(2)(A), no matter the source of the cause of action. Although the Supreme Court has recognized that the Westfall carveout preserves an action "brought for a violation of the Constitution" under *Bivens*, *see, e.g., Hui v. Castaneda*, 559 U.S. 799, 807 (2010), it has never held that this statutory phrase includes *only* claims under *Bivens*. Instead, as Judge Walker of the D.C. Circuit has observed, the Westfall carveout is most naturally read to *also* preserve state and local law civil actions "brought for a violation of the Constitution of the United States." *Buchanan v. Barr*, 71 F.4th 1003, 1012–13, 1016 (D.C. Cir. 2023) (Walker, J. concurring). "For most of our history," state and local civil actions have been available to "those injured by federal officers' unconstitutional conduct." *Id.* at 1012. The long history of constitutional enforcement against federal officers, principles of statutory construction, the implications of a contrary construction, and the canon of constitutional avoidance all bolster a plain reading of the Westfall carveout to preserve state and local law actions brought for a violation of the Constitution.

### A. The plain text of the Westfall carveout encompasses any civil action brought for violations of the U.S. Constitution.

In construing a statute, courts "look first to its language, giving the words used their ordinary meaning." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012) (cleaned up). The Westfall carveout applies by its terms to any "civil action" "brought for a violation of the Constitution," § 2679(b)(2)(A), no matter the source of the cause of action. The plain meaning of a "civil action" covered by the Westfall carveout is not limited to federal causes of action but also includes causes

of action under state and local law. A civil "action" means a civil "judicial proceeding." *Action*, Black's Law Dictionary (12th ed. 2024); *see also Civil action*, Black's Law Dictionary (12th ed. 2024) (defining "civil action" by cross referencing the definition of "action"). An action includes "an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." *Action*, Black's Law Dictionary (12th ed. 2024).

Surrounding text in the Westfall Act confirms that "civil action" includes state and local causes of action. "[I]dentical words and phrases within the same statute should normally be given the same meaning." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007). Here, the Westfall Act's exclusive-remedy provision provides that the FTCA remedy is "exclusive of any other *civil action* for money damages . . . ." § 2679(b)(1) (emphasis added). The phrase "civil action" there plainly covers state causes of action, *see, e.g., Osborn v. Haley*, 549 U.S. 225, 229-33 (2007) (applying § 2679(b)(1) to Kentucky tort claims)—hardly a surprise, given that the Act was passed in response to the Supreme Court's holding in *Westfall* that federal officers were not immune from state tort law. Accordingly, the same meaning of "civil action"—incorporating state and local causes of action—also applies to the Westfall Act carveout in the next subsection, § 2679(b)(2). There is no reason to assume instead that, in drafting the carveout, the Act suddenly and silently switched to addressing only federal causes of action.

The next word in the Westfall carveout—"brought"—is similarly capacious. Black's Law Dictionary defines the phrase "bring an action" as "[t]o sue" or "institute legal proceedings." *Bring an action*, Black's Law Dictionary (12th ed. 2024). "For" is a preposition that is "used as a function word to indicate purpose," including to mean "with respect to" or "concerning." "For," Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/for

(accessed Oct. 22, 2026). Thus, an action "brought" "for" a violation of the U.S. Constitution encompasses an action instituting legal proceedings "with respect to" or "concerning" a federal constitutional violation.

Contrary to the government's argument, nothing in the plain language of the Westfall carveout excludes state civil actions for violations of the U.S. Constitution. This omission is particularly notable because Congress demonstrated throughout the FTCA that it knows how to impose such limitations when it means to do so. *See* 28 U.S.C § 2680 (listing 13 exceptions to the FTCA's authorization of a cause of action against the government). Courts "do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and [that] reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005). "Nor is there any such thing as a 'canon of donut holes,' in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 669 (2020). "Instead, when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule." *Id.* And "it is never [courts'] job to rewrite a constitutionally valid statutory text." *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017).

The government's resort to legislative history cannot overcome the text. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (cleaned up); *accord Bostock*,

590 U.S. at 675-76 (rejecting appeal to legislators' expectations as a basis to override textual command). With language this clear, there is no need for legislative history.[3]

**B. The history of state and local law actions against federal officers to vindicate constitutional rights confirms the plain meaning of the Westfall carveout's text.**

The plain meaning of the Westfall carveout's text is underscored by our nation's long history of state law actions as a primary tool to hold federal officers accountable for constitutional violations. An action "brought for a violation of the Constitution," § 2679(b)(2)(A), has, since the Founding, been recognized to include state and local law claims brought to vindicate constitutional rights. Indeed, for the vast majority of our Nation's history, these claims would have been *all* that this phrase referred to. "From the ratification of the Bill of Rights until 1971 [when the Court decided *Bivens*], the Court did not create implied private action[s] for damages against federal officers alleged to have violated a citizen's constitutional rights," yet such plaintiffs were not without remedy because "[s]uits to recover such damages were generally brought under state tort law." *Hernandez v. Mesa*, 589 U.S. 93, 115-16 (2020) (Thomas, J., concurring). "The Framers saw state common-law suits as an important check on federal misconduct." *Buchanan*, 71 F.4th at 1012 (Walker, J. concurring); *see also Browder v. City of Albuquerque*, 787 F.3d 1076, 1084 (10th Cir. 2015) (Gorsuch, J., concurring) ("Often, after all, there's no need to turn federal courts into common law courts and imagine a whole new tort jurisprudence under the rubric of § 1983 and the Constitution in order to vindicate fundamental rights when we have state courts ready and willing to vindicate those same rights using a deep and rich common law that's been battle tested through the centuries.").

[3] Regardless, the snippets the government cites actually *support* Sebastián's reading of the carveout provision by showing that the bill's sponsors were familiar with *Bivens* claims and thus could have crafted language to specify that the carveout preserved only those claims and no others. That they did not do so underscores Sebastián's central point: the Court should not read limitations into § 2679(b)(2)(A) that do not appear there.

For instance, before *Bivens*, the state common law tort of trespass "provided virtually the only civil remedy against Fourth Amendment violations perpetrated by federal officials." Akhil Reed Amar, *Using State Law to Protect Federal Constitutional Rights: Some Questions & Answers About Converse-1983*, 64 U. Colo. L. Rev. 159, 160 (1993). Although "the ultimate issue before the court concerned the federal Constitution," the "cause of action was supplied by state law." *Buchanan*, 71 F.4th at 1014 (Walker, J., concurring) (cleaned up).

Indeed, in *Bivens* itself, the Solicitor General argued that "there was no need to create a new federal remedy for Fourth Amendment violations, because 'a body of state law' already provided 'substantial recovery.'" *Buchanan*, 71 F.4th at 1017 n.6 (Walker, J., concurring) (citation omitted). The government's premise was correct: Even after *Bivens*, although most plaintiffs invoked the *Bivens* cause of action, "state law continued to provide causes of action for damages, even in cases where *Bivens* was available." Thomas Koenig & Christopher D. Moore, *Of State Remedies and Federal Rights* 15-16 (May 29, 2023), *at* https://ssrn.com/abstract=4462807 (footnotes omitted). This history confirms that an action "brought for a violation of the Constitution," § 2679(b)(2)(A), does not mean *Bivens* alone.

### C. Statutory canons confirm the plain meaning of the Westfall carveout to preserve state and local law actions for constitutional violations.

Principles of statutory interpretation further support reading the Westfall carveout to permit state and local suits "brought for a violation of the Constitution." § 2679(b)(2)(A). "Statutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *United States v. Texas*, 507 U.S. 529, 534 (1993) (cleaned up); *accord, e.g., Exxon Shipping Co. v. Baker*, 554 U.S. 471, 489 (2008). Given the long history of state common law actions to enforce constitutional rights, *see supra* Part II.B, this canon applies with full force here.

Of course, Congress may supplant "long-established and familiar principles," as it did explicitly with respect to *non*-constitutional tort claims against federal officers when it passed the Westfall Act's exclusive-remedy provision. But Congress does not "hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Had Congress intended to abrogate state law causes of action for violations of the Constitution, as the government insists, it would have done so explicitly. For example, it could have drafted the carveout to preserve actions "brought under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)." That is not what the text of § 2679(b)(2)(A) says. *Cf. Bostock*, 590 U.S. at 656-57 (refusing to read limitations into a statute where "Congress could have taken a more parsimonious approach" but did not). The presumption in favor of common law principles counsels against reading limitations into that provision. And not only is such language absent, but the text dictates the opposite result—the Westfall carveout evidences a desire to *preserv*e rather than scuttle constitutional enforcement actions. *Buchanan*, 71 F.4th at 1017 (Walker, J. concurring).

Yet another canon of statutory interpretation confirms that the Westfall carveout is not limited to implied *Bivens* causes of action. "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015). The Westfall carveout's neighboring provision, § 2679(b)(2)(B), preserves civil actions "brought for a violation of a statute of the United States," but only for statutes "under which such action against an individual is otherwise authorized." By contrast, Congress did not restrict the Westfall carveout for constitutional claims to any specific cause of action (such as *Bivens*). By including a cause-of-action limitation in § 2679(b)(2)(B) and omitting it in the neighboring Westfall carveout, § 2679(b)(2)(A), Congress intentionally preserved

all civil actions "brought for" violation of the U.S. Constitution—regardless of whether state or federal law creates the cause of action.

### D. Imposing an atextual "*Bivens*-only" limitation on the Westfall carveout would present serious constitutional problems.

Not only is Sebastián's interpretation of the Westfall carveout faithful to its text and history—the alternative is untenable. Reading the Westfall Act to eradicate state law actions "brought for a violation of the Constitution," 28 U.S.C. § 2679(b)(2)(A), would present serious constitutional problems. "[W]hen deciding which of two plausible statutory constructions to adopt . . . [i]f one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court." *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005).

In *Webster v. Doe*, the Supreme Court held that "deny[ing] any judicial forum for a colorable constitutional claim" would present a "serious constitutional question," and thus the Court required Congress to be "clear" if it intended "to preclude judicial review of such constitutional claims." 486 U.S. 592, 603 (1988). Congress is presumed to be "knowledgeable about existing law," *Internal Revenue Serv. v. Murphy*, 892 F.3d 29, 35 (1st Cir. 2018) (cleaned up), and it enacted the Westfall Act several months after *Webster v. Doe* was decided, *see* Pub. L. No. 100-694, 102 Stat. 4563 (1988). Yet, far from clearly precluding judicial review of constitutional claims, Congress explicitly *preserved* the viability of civil actions "brought for" violations of the U.S. Constitution. *Id.*

Moreover, adopting the government's reading of the Westfall Act to preclude state law claims "brought for a violation of the Constitution" would place some constitutional violations entirely beyond judicial review. To the extent constitutional violations are tortious, the FTCA could reach some of them, because the FTCA provides a cause of action against the United States for

individuals injured by federal employees' conduct where it is within the scope of their employment and would expose them to liability under local law. 28 U.S.C. § 1346(b)(1). But some constitutional claims would escape the FTCA's reach because of its many exceptions. These exceptions not only defeat the use of the FTCA for claims falling within specified categories, but also (because of the exclusive-remedy provision of 28 U.S.C. § 2679(b)(1), discussed above), defeat state tort claims regarding these categories of wrongs, leaving plaintiffs with no remedy at all. *See United States v. Smith*, 499 U.S. 160, 166-67 (1991) (explaining that "the required substitution of the United States as the defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether"). For instance, the FTCA bars claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," except for those falling within the first six categories if committed by an "investigative or law enforcement officer." 28 U.S.C. § 2680(h). The FTCA likewise bars certain claims involving customs, taxation, or the detention of property by "any other law enforcement officer," 28 U.S.C. § 2680(c); claims "caused by the imposition or establishment of a quarantine by the United States," *id.* § 2680(f); and certain claims involving the mail, *id.* § 2680(b), admiralty, *id.* § 2680(d), monetary regulation, *id.* § 2680(i), and more, *see generally id.* § 2680. Thus, under the government's interpretation, a cross-section of serious constitutional violations would, even if tortious under state or local law, evade judicial redress under the FTCA—including, for instance, interference with contract rights based on a person's race, *see id.* § 2680(h), seizure by a federal customs officer of a book or film based on its content, *see id.* § 2680(c); seizure of a federal prisoner's religious items by correctional officers, *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214,

216 (2008) (so holding, pursuant to § 2680(c)); and detention under quarantine because of a pandemic, *see* 28 U.S.C. § 2680(f).

In addition, some constitutional claims will escape the FTCA's reach because they are not tortious under state law: for instance, there is generally no common law tort of discrimination, denial of due process, or suppression of speech. And as discussed in Sebastián's opposition to the individual defendants' motion to dismiss, ECF No. 48, expanding *Bivens* has become "a disfavored judicial activity." *Goldey v. Fields*, 606 U.S. 942, 944 (2025) (per curiam), so *Bivens* will rarely be available to fill in the gaps in the FTCA's coverage as to many constitutional violations by federal officers. All that is left to fill these gaps are the traditional, historical remedies: state actions "brought for a violation of the Constitution" pursuant to the Westfall carveout. But if the Westfall Act is read to exclude such state law claims as well, a subset of constitutional violations by federal officers would lie beyond the reach of any civil remedy.

This remedial gap would raise a "serious constitutional question" by leaving many plaintiffs without "any judicial forum for a colorable constitutional claim." *Webster*, 486 U.S. at 603; *accord, e.g., Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 681 n.12 (1986); *Johnson v. Robison*, 415 U.S. 361, 366 (1974). Under established principles of statutory construction, the Court should avoid an interpretation that raises "a multitude of constitutional problems." *Clark*, 543 U.S. at 380-81. It would be both unjust and inconsistent with the legislative commands of two separate legislatures—Maine's legislature in enacting the MCRA, and Congress in preserving the availability of constitutional claims—to deny relief under the MCRA to plaintiffs who could substantiate their constitutional claims.

**E. The government's atextual reading of the Westfall carveout fails.**

The government never explains *why* the statutory text should be artificially narrowed, instead simply proceeding as if the statutory language "brought for a violation of the Constitution" were actually "brought under *Bivens*." The authorities on which the government relies offer scant support, as many of them never even remotely considered the argument pressed by Sebastián here. Those that did actually *support* Sebastián's textually grounded statutory interpretation.

The government claims that *United States v. Smith*, 499 U.S. 169 (1991), "read" the Westfall carveout "to except only *Bivens* claims from the Westfall Act." Mtn. 5. In fact, the scope of § 2679(b)(2)(A) was not at issue in *Smith*, which involved a garden-variety medical malpractice claim, not a claimed constitutional violation. The government stresses that *Smith* described § 2679(b)(2)(A) as applying to "a *Bivens* action," 499 U.S at 166, but *Smith* did not say "only a *Bivens* action" or otherwise opine on the issue presented here. *See also Hui v. Castaneda*, 559 U.S. 799, 807 (2010) (referring to the Westfall carveout in dicta as both "an exception for constitutional violations" and "exception for *Bivens* claims"); *Quiñonez v. United States*, 2023 WL 5663156 at *3 (N.D. Cal. Aug. 30, 2023) (relying on dicta in *Smith*), *appeal docketed*, No. 25-3386 (9th Cir., May 28, 2025). Claims preserved by the Act's plain text cannot be scuttled by this sort of drive-by dicta. *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (explaining that cases do not speak authoritatively on propositions they merely assume or that "lurk in the record").

Underscoring that the Supreme Court has never resolved the question presented by this case, the Court has at times referred to the Westfall carveout as encompassing "constitutional violations," *not* just "*Bivens* claims." *Simmons v. Himmelreich*, 578 U.S. 621, 628 n.4 (2016); *see also Hui*, 559 U.S. at 807. In choosing between an atextual judicial gloss on a statutory phrase and the phrase itself, text must prevail. *See, e.g.*, *Muldrow v. City of St. Louis*, 601 U.S. 346, 353 (2024)

(overruling decades' worth of circuit precedent adding a "heightened threshold of harm" to Title VII because the statutory text "imposes no such requirement").

Of the handful of judges who have engaged with the question presented by Sebastián's claim, a majority *support* his reading of the statute. As discussed above, Judge Walker's opinion in *Buchanan* supports Plaintiff's position. So does the district court's opinion on remand from *Buchanan*, which considered whether D.C.-law claims that did not incorporate a constitutional violation as an element were preserved by the carveout. *Black Lives Matter D.C. v. Barr*, No. 20-cv-1469, 2024 WL 3300158, at *9 (D.D.C. July 4, 2024) (Friedrich, J.). Although Judge Friedrich declined to adopt the most expansive reading of the Westfall Act as extending to all state law tort claims brought *for the purpose of* redressing a constitutional violation, she endorsed the proposition that "'a civil action . . . brought for a violation of the Constitution' must require a plaintiff to plead a constitutional violation either as a *Bivens* claim *or as part of his cause of action*." *Id.* (emphasis added). It is simply not true, as the government argues, that Judge Friedrich's opinion "found that the exception does not apply to claims like Plaintiff's here." Mtn. 16. Judge Friedrich's analysis supports the conclusion that the Westfall Act carveout encompasses claims where a constitutional violation is a part of the cause of action. *See Black Lives Matter D.C.,* 2024 WL 3300158 at *5–6. Sebastián's MCRA claims, as explained in Part III below, squarely require him to plead a constitutional violation as a specific element.

Other judges have found the reasoning of Judges Walker and Friedrich persuasive. In *Cross v. Buschman,* Judge Matey cited Judge Walker's opinion approvingly when describing potential alternate remedies for a *Bivens* claim, because the availability of some state law claims for federal constitutional injuries helps close a remedial gap. No. 22-3194, 2024 WL 3292756, at *5 n.12 (3d Cir. July 3, 2024) (Matey, J., concurring). And in *Rise v. Bagshaw*, Judge Lamberth considered

whether common law assault and battery claims, without a constitutional violation as an element, were preserved by the Westfall carveout; he adopted Judge Friedrich's reasoning (which, as noted, is favorable to Sebastián's) "in full." No. 1:24-cv-2388-RCL, 2025 WL 1380478, at *15 (D.D.C. May 13, 2025). Even the government's citations to cases that reject Sebastián's position offer some support for it. Judge Klausner (in two separate cases), recognized that the text of the Westfall Act supports Plaintiff's position—"the language of § 2679(b)(2)(A) broadly suggests that any action brought for Constitutional violations may escape the FTCA's exclusivity"—but discounted the text based on the same dicta from *Smith* discussed above. *Pearsons v. United States*, 723 F. Supp. 3d 825, 832 (C.D. Cal. 2024); *Mellein v. United States*, No. 2:23-cv-7970-RGK-MAR, 2024 WL 1601802, at *5 (C.D. Cal. Mar. 14, 2024).[4]

* * *

In sum, Sebastián's reading of the Westfall Act "finds support in the text of the statute, accords with Founding-era principles of officer accountability, and closes a remedial gap—ensuring relief for those injured by federal officers' unconstitutional conduct." *Buchanan*, 71 F.4th at 1017 (Walker, J., concurring). The Court should read the Westfall carveout as encompassing both *Bivens* and state law civil actions "brought for a violation of the Constitution." 28 U.S.C. § 2679(b)(2)(A).

[4] Sebastián notes for the sake of comprehensiveness that the Third Circuit took the same view as the government urges here, but in a case where the plaintiff effectively conceded the point by "offer[ing] no counterargument in her papers or at oral argument," *Henry v. Essex Cnty.*, 113 F.4th 355, 364 (3d Cir. 2024), and one district court expressed concern that Judge Walker's "reasoning has not caught on elsewhere," *Pompy v. Moore*, No. 19-10334, 2024 WL 845859, at *12 (E.D. Mich. Feb. 28, 2024), *aff'd sub nom. Pompy v. First Merchants Bank*, No. 24-1249, 2025 WL 2694801 (6th Cir. May 23, 2025) (mem.), before ultimately dispensing with the common law trespass claim before it on the distinct ground that it did not satisfy the elements of the relevant tort, *id.* at *13. Novelty, however, is not a reason to reject the plain meaning of statutory text. *See Muldrow*, 601 U.S. at 354–56 (adopting a textually faithful interpretation of Title VII despite significant precedent to the contrary).

### III. Sebastián's MCRA claims are brought for violations of the U.S. Constitution.

Once it is established that state law actions can be among those "brought for a violation of the Constitution," the next question is whether Sebastián's MCRA claims satisfy this description. On the broadest reading of this text, the Westfall carveout preserves any state law claim whose "*purpose* is to remedy a constitutional violation." *Buchanan*, 71 F.4th at 1016 (Walker, J., concurring, emphasis in original). Under a narrower reading, the Westfall carveout applies only to state laws that specifically provide a cause of action for constitutional violations, such that "a constitutional violation is part of the plaintiff's cause of action." *Id.*; *accord Black Lives Matter D.C.*, 2024 WL 3300158, at *9.

Because Sebastián's MCRA claims comfortably satisfy even the narrower reading of the Westfall carveout, the Court need not consider the broader one. A federal constitutional violation is plainly "a part of" Sebastián's causes of action under the MCRA, and therefore his MCRA claims are "brought for a violation of the Constitution." The MCRA provides a cause of action for damages to "[a] person whose exercise or enjoyment of the rights secured by the United States Constitution or the laws of the United States [or state law] has been interfered with, or attempted to be interfered with" by "any person, whether or not acting under color of law." 5 M.R.S. § 4682 (1-A); *see also* 5 M.R.S. § 4682(1-A)(B) (requiring that interference with secured rights be accomplished by actual or threatened force, property damage or trespass, or conduct that would cause reasonable person to suffer emotional distress or fear death or bodily injury).

The Maine Legislature enacted the MCRA in 1989, just one year after Congress passed the Westfall Act expressly preserving claims "brought for a violation of the Constitution."[5] Using language nearly identical to the Westfall carveout, the title of the enacted legislation was

[5] Under established principles of statutory interpretation, "[t]he [Maine] Legislature is presumed to be aware of the state of the law . . . when it passes an act." *Musk v. Nelson*, 647 A.2d 1198, 1202 (Me. 1994).

"Violations of constitutional rights; . . ." 5 M.R.S. §§ 4681–82, and the title of the bill as presented to the Maine Legislature was "An Act to Prevent, Punish and Remedy Violations of Constitutional Rights," L.D. 1253 (114th Legis. 1989), https://lldc.mainelegislature.org/Open/LDs/114/114-LD-1253.pdf.

Maine state and federal courts have repeatedly confirmed what the MCRA's plain language and statutory history make clear: when a plaintiff seeks remedies under the MCRA for "interfere[nce]" with their "exercise or enjoyment of the rights secured by the United States Constitution," a federal constitutional violation is a required element of the plaintiff's MCRA claim. *See* 5 M.R.S. § 4682(1-A). The Law Court has long held that the MCRA "is patterned after § 1983 and 'provides a private cause of action for violations of constitutional rights by 'any person.'" *Doe I v. Williams*, 2013 ME 24, ¶ 72, 61 A.3d 718, 739 (quoting *Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994)). This Court has likewise observed, "[t]he Maine Civil Rights Act, 5 M.R.S. §§ 4681-85, patterned after 42 U.S.C. § 1983, provides a private cause of action for violations of constitutional rights under the Federal or Maine Constitutions, by any person, 'whether or not acting under color of law.'" *Khaqan v. Town of Bucksport*, No. 1:23-CV-00162-JAW, 2024 WL 691445, at *9 (D. Me. Feb. 20, 2024) (quoting 5 M.R.S. § 4682). Section 4682 of the MCRA "provides a general remedy for violations of federal and state constitutional and statutory rights." *Cohen v. City of Portland*, No. 2:21-CV-00267-NT, 2022 WL 1406204, at *4, n.5 (D. Me. May 4, 2022) (quoting *Jackson v. Town of Waldoboro*, 751 F. Supp. 2d 263, 275 (D. Me. 2010)). Courts thus routinely interpret the MCRA as the "Maine analogue to 42 U.S.C. 1983." *Plourde v. Mason*, No. 1:24-CV-00291-LEW, 2024 WL 4403917, at *4 (D. Me. Oct. 4, 2024), *report and rec. adopted sub nom. Plourde v. Kennebec Cnty. Sheriff's Off.*, 2025 WL 551471 (D. Me. Feb. 19, 2025); *accord Cohen v. City of Portland*, 110 F.4th 400, 404 (1st Cir. 2024).

The Law Court, the First Circuit, and this Court often reject MCRA claims on the ground that the plaintiffs failed to establish a violation of the U.S. Constitution—thereby showing that such a violation is a required element of their claims. *See, e.g., Doe v. Graham*, 2009 ME 88, ¶ 26, 977 A.2d 391, 400 ("Doe has not sufficiently alleged a failure of due process necessary to sustain a claim of deprivation of liberty under federal and state constitutional standards, and dismissal of her Civil Rights Act claim is warranted."); *Doe I*, 2013 ME 24, ¶¶ 52-72, 61 A.3d 718, 735–39; *Cohen*, 110 F.4th at 404–05 (1st Cir. 2024); *Plourde*, 2024 WL 4403917, at *4. As these cases make clear, a violation of the U.S. Constitution is a required element of federal constitutional claims under the MCRA.

The government suggests Sebastián's MCRA claims cannot fall within the Westfall carveout because state law provides the cause of action for the constitutional violation, rather than the U.S. Constitution "inherently giv[ing] rise to a cause of action for damages." Mtn. 11. But that is merely a recycling of the government's atextual argument that the Westfall carveout only preserves *Bivens* claims. Such an interpretation would rewrite the statute by limiting the Westfall carveout to an "implied damages remedy created by the U.S. Constitution." As discussed above, the statute is far broader and covers any "civil action" against government employees that is "brought for a violation" of the U.S. Constitution. § 2679(b)(2)(A). *See supra* Part II.

Nor is the government's citation to *Ward v. Schaefer*, No. 16-12543, 2017 WL 2951889 (D. Mass. July 10, 2017), illuminating. Although the court substituted the United States as defendant for Mr. Ward's Massachusetts Civil Rights Act claim and not for his *Bivens* claim, *id.* at *3, the briefing in *Ward* reveals that Mr. Ward's counsel challenged the notice of substitution only with respect to Mr. Ward's *Bivens* claims. *See Ward v. Schaefer*, Case No. 1:16-cv-12543 (D. Mass.), ECF Nos. 38, 42. Mr. Ward's counsel did not mention the Massachusetts Civil Rights Act in its

briefing once. Accordingly, the argument raised here—that a state law claim predicated on a federal constitutional violation falls within the Westfall carveout—was not raised for that court's consideration.

The government further contends that Sebastián's MCRA claims for violations of the Fourth and Fifth Amendment are not claims "brought for a violation of the Constitution" because an MCRA claim could be predicated on an underlying state law violation, rather than a federal constitutional violation. Mtn. 11. That is illogical. An MCRA claim brought purely to vindicate a state law right would, of course, not fall within the Westfall carveout. But that does nothing to undercut the fact that an MCRA claim like Sebastián's, predicated solely on violations of his Fourth and Fifth Amendment rights under the *federal* Constitution, *is* a claim brought for a violation of the Constitution. Indeed, Section 1983 (on which the MCRA is patterned) likewise provides a vehicle for challenging not only constitutional violations but also violations of federal statutory law. 42 U.S.C. § 1983. That Section 1983 applies to both constitutional and statutory violations does not mean a Section 1983 claim predicated on a constitutional violation by a state actor is not a claim "brought for a violation of the Constitution." The government's argument based on the MCRA's additional required elements is equally illogical. *See* Mtn. 11, n.8. That an MCRA claim has *additional* required elements—including a showing of actual or threatened force, trespass, or conduct that would cause a reasonable person emotional distress—does not alter the fact that a constitutional violation is a required element of Sebastián's claim.[6]

Sebastián's MCRA claims for Fourth and Fifth Amendment constitutional violations fit comfortably within the Westfall carveout, because "a constitutional violation is part of the

[6] The government's citation to the MCRA's venue provision, *see* Mtn. 11, n.7 (citing 5 M.R.S. § 4682(2)), is irrelevant to the question before the Court: whether an MCRA claim premised on a federal constitutional violation is a claim "brought for a violation of the Constitution," as the Westfall carveout uses that term.

plaintiff's cause of action." *Buchanan*, 71 F.4th at 1016 (Walker, J., concurring). The Westfall Act preserves these claims for constitutional violations against federal officers, just as it preserves *Bivens* claims.

**CONCLUSION**

Because Sebastián's civil rights claims for Fourth and Fifth Amendment violations fall squarely within the Westfall carveout for "civil actions" "brought for a violation of the Constitution of the United States," the Court should reject the government's substitution and deny the motion to dismiss.

Dated: October 23, 2026

Respectfully submitted,

JUAN SEBASTIÁN CARVAJAL-MUÑOZ.

By his attorneys:

/s/ *Carol Garvan*
Carol Garvan
Zachary L. Heiden
Emma Bond
Max Brooks
ACLU of Maine Foundation
PO Box 7860
Portland, Maine 04112
(207) 619-8687
cgarvan@aclumaine.org
zheiden@aclumaine.org
ebond@aclumaine.org
mbrooks@aclumaine.org

Benjamin R. Gideon
Taylor A. Asen
Rosalie B.C. Wennberg
Gideon Asen LLC

95 Main Street, No.5
Auburn, Maine 04210
(207) 206-8982
service@gideonasenlaw.com
rwennberg@gideonasenlaw.com

James Wagner
Law Office of James Wagner
343 Ocean House Road
Cape Elizabeth, Maine 04107
(207) 400-6038
jamiewagnerlaw@gmail.com

Scott Michelman (D.C. Bar No. 1006945)*
Laura Follansbee (D.C. Bar No. 1782046)*
ACLU Foundation of the District of Columbia
529 14th St. NW, Suite 420
Washington, D.C. 20045
(202) 457-0800
smichelman@acludc.org
lfollansbee@acludc.org

Julie A. Murray (D.C. Bar No. 1003807)*
Matthew R. Segal (D.C. Bar No. 483486)*
American Civil Liberties Union Foundation
915 15th Street NW
Washington, D.C. 20005
(202) 675-2326
jmurray@aclu.org
msegal@aclu.org

*Counsel for Plaintiff*

*Admitted *pro hac vice*.