IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| JUAN SEBASTIÁN CARVAJAL-MUÑOZ, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Civil No.: 2:26-CV-00190 |
| JACK COREY RAVENCAMP, *et al.*, | ) | |
| *Defendants*. | ) | |

**BRIEF OF AMICUS CURIAE PROTECT DEMOCRACY PROJECT IN SUPPORT OF PLAINTIFF**

Amicus curiae Protect Democracy Project submits this brief in support of Plaintiff's Objection (ECF No. 41; *see also* ECF No. 49 (Pl. Mem. Of Law)) to the United States's Notice of Substitution under 28 U.S.C. § 2679(d)(1) (ECF No. 38).[1]

## INTEREST OF THE AMICUS

The Protect Democracy Project is a 501(c)(3) nonpartisan, nonprofit whose mission is to prevent our democracy from declining into a more authoritarian form of government. Central to that mission is ensuring meaningful remedies for constitutional violations. The Protect Democracy Project and its 501(c)(4) partner, Protect Democracy United (collectively "Protect Democracy"), have worked with legislators in California, Connecticut, Massachusetts, New York, and Vermont on statutes that, like 42 U.S.C. § 1983, supply a cause of action for violations of the United States Constitution by persons acting under color of law.[2]

[1] No party's counsel authored this brief in whole or in part, and no party, party's counsel, or person other than Amicus and its counsel contributed money intended to fund the brief's preparation or submission.

[2] *See* Cal. Civ. Code § 53.8; Conn. Pub. Act No. 26-14, § 1 (West); 2026 Mass. Acts Ch. 163 (2026), 2026 Mass. Legis. Serv. Ch. 163 (H.B. 5620) (West); N.Y. Civ. Rights Law § 85 (McKinney); Vt. Stat. Ann. tit. 12, § 5797 (West).

These statutes' applicability to federal officers depends on the Westfall Act's exception for any civil action "brought for a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A) ("subparagraph (A)"). The government asks the Court to hold either that the exception allows *Bivens* claims only or that a claim is not "brought for a violation of the Constitution" when state law—here, the Maine Civil Rights Act, 5 M.R.S. § 4682 ("MCRA")—supplies the cause of action. *See* U.S. Mot. Dismiss 4-11, ECF No. 40. Read faithfully, the Westfall Act's plain text allows neither reading. By its plain terms it preserves any civil action in which a federal constitutional violation is a constituent component of the plaintiff's claim for relief, and it does not concern itself with what law supplies the cause of action. Amicus addresses only that question and takes no position on any other question.

## ARGUMENT

### I. The Westfall Act's plain text preserves suits "brought for a violation of the Constitution of the United States" and is not limited to *Bivens* claims.

The starting point in interpreting a statute is "the language of the statute itself." *Republic of Sudan v. Harrison*, 587 U.S. 1, 8 (2019) (cleaned up). If the language "is unambiguous and the statutory scheme is coherent and consistent," the interpretive inquiry is over, and the court need only apply the statute according to its terms. *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016) (cleaned up). The Supreme Court has consistently made this plain-text approach dispositive when the Federal Tort Claims Act ("FTCA")[3] and related liability statutes, like the Westfall Act here, specify that a statutory command does not apply to a designated category of claims. *See, e.g., Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016); *Hui v. Castanada*, 559 U.S. 799, 805 (2010). The plain text approach is dispositive here and requires rejecting the government's contrary arguments.

[3] 28 U.S.C. §§ 1346(b)(1); 2671-2680 (2024).

The Westfall Act makes the FTCA the exclusive remedy for injuries or death "arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1). That general rule has two exceptions. Westfall Act immunity—

> does not extend or apply to a civil action against an employee of the Government—
>
> (A) which is brought for a violation of the Constitution of the United States, or
>
> (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized.

*Id.* § 2679(b)(2). The government's attempt to limit subparagraph (A) to "*Bivens* actions"—a limited subcategory of claims brought for constitutional violations—is incompatible with the statute's plain text. The plain text further shows that, contrary to the government's theory, Congress did not otherwise limit the Westfall Act immunity exception in subparagraph (A) by reference to the source of the plaintiff's cause of action.

### A. The Westfall Act exception says "violation of the Constitution," not "*Bivens*."

In *Bivens* itself, the Supreme Court forecast that the claim allowed there might not encompass all cases in which federal employees violate the Constitution. The Court anticipated cases presenting "special factors" that might counsel against judicial creation of a cause of action and the possibility that Congress might furnish its own remedies. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971); *see also Carlson v. Green*, 446 U.S. 14, 18-19 (1980). By 1988, when the Westfall Act was adopted, that forecast had become holding, and the Supreme Court's decision in *Schweicker v. Chilicky*, 487 U.S. 412 (1988), emphasized that not every federal employee constitutional violation is actionable under *Bivens*. *See id.* at 421-22. Congress is presumed to be aware of relevant judicial precedent when it enacts statutes. *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010). When legislating against the backdrop of *Bivens* jurisprudence in 1988, then,

Congress would have known that a "*Bivens* action" and an action "brought for a violation of the Constitution" were not synonymous. And Congress chose "brought for a violation of the Constitution" rather than some narrower description, such as "*Bivens* action" (as the government argues here), or "implied . . . cause[ ] of action under the Constitution" as the Supreme Court doctrinally describes *Bivens* claims. *See Egbert v. Boule*, 596 U.S. 482, 491 (2022); *see also Davis v. Passman*, 442 U.S. 228, 242 (1979) (similar). In nonetheless arguing for a "*Bivens*-only" gloss on the Westfall Act immunity exception, the government ignores the mismatch between its "*Bivens*-only" formulation of the exception and what the statute actually says. That mismatch is reason alone to reject the government's reading and to treat the plain text as dispositive.

The Supreme Court has consistently followed this plain text approach to the Westfall Act and similar federal tort liability statutes. In *Hui*, the Court held that 42 U.S.C. § 233(a), which makes an FTCA suit the exclusive remedy for certain injuries caused by Public Health Service personnel, barred *Bivens* claims even though section 233(a) predated *Bivens*. The Court explained that section 233(a)'s "broad" language "easily accommodates both known and unknown causes of action." *Hui*, 559 U.S. at 806. In *Simmons*, the Court held that the FTCA's "judgment-bar" provision, 28 U.S.C. § 2676, does not shield employees from *Bivens* liability because section 2680's plain language provided that section 2676 "shall not apply" to claims involving employees' performance of discretionary functions. *See* 578 U.S. at 626. In *United States v. Smith*, 499 U.S. 160 (1991), the Court refused to recognize an implied Westfall Act exception preserving employee liability for cases in which the FTCA provided no recovery. The Westfall Act expressly made covered cases subject to FTCA exceptions, *see* 499 U.S. at 166; 28 U.S.C. § 2679(d)(4), and in any event it contained only two express exceptions to its exclusivity rule thereby making it improper to infer a third. *See* 499 U.S. at 167; 28 U.S.C. § 2679(b)(2). *Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008), involved the scope of government FTCA liability rather than the question of when the government could substitute for its

employee. But its plain text approach is also instructive. The Court declined to confine the FTCA's broad "detention-of-goods" exception to the class of officers the bill's legislative history suggested Congress had in mind. It explained that Congress "easily could have written" a narrower provision had it "intended to limit § 2680(c)'s reach." 552 U.S. at 227. And the Court refused to adopt a "narrowing construction" when Congress used an "all-encompassing phrase." *Ibid.* The same is true here. The Westfall Act preserves employee liability in cases "brought for a violation of the Constitution of the United States," 28 U.S.C. § 2679(b)(2)(A), and that must be read to "mean what it literally says." 552 U.S. at 228.

Read for "what it literally says," the Westfall Act exception preserves any civil action "brought for a violation of the Constitution of the United States" regardless of whether the right to sue comes from *Bivens*, 42 U.S.C. § 1983, or a state statute like the MCRA. The broad language Congress chose "easily accommodates both known and unknown causes of action." *Hui*, 559 U.S. at 806. The Maine Act, adopted the year after the Westfall Act, *see* P.L. 1989, ch. 582, 1989 Me. Legis. Serv. 582, qualifies as one such unknown cause of action, as should the state statutes enacted since.

The government itself urges a plain-text reading of the Westfall Act, at least when that limits liability. In *Sobitan v. Glud*, 589 F.3d 379, 387 (7th Cir. 2009), for example, the government invoked the breadth of section 2679(b)(1) to defeat a damages claim under a federal treaty. *See id.* at 387. Opposing certiorari, it told the Supreme Court that the "unambiguous text of section 2679(b)(1)" controlled the case notwithstanding Congress's "primary focus" on overruling the Supreme Court's *Westfall* decision[4] regarding state common law tort liability because Congress "chose to adopt . . . sweeping language." Brief for the Respondents in Opposition at 11 & n.4, *Sobitan v. Glud*, (No. 09-1214), 2010 WL 2709836 (U.S. July 2010) ("Gov't Sobitan Br."). Similarly, in *Ali*, the government's

[4] *Westfall v. Erwin*, 484 U.S. 292 (1988).

"simplest response" to the argument that broad text should be read narrowly was "that, if Congress had intended to impose such a narrow limitation, it would have written a different statute." Brief for the Respondents at 16, *Ali*, 552 U.S. 214 (2007) (No. 06-9130) 2007 WL 2808467 (U.S. Sept. 2007). Here, by contrast, in an effort to narrow an exception that preserves liability, the government sidesteps the statute's plain text and points to ambiguous legislative history. *See* U.S. Mot. Dismiss 9 & n.6, ECF No. 40. That is error for the reasons explained in *Ali*, *Hui*, *Smith* and other cases. *See also infra* n.7.

In yet another way the Westfall Act's text confirms that Congress did not limit the constitutional exception in section 2679(b)(2)(A) as the government supposes. Subparagraph (A) identifies the suits it preserves by one feature: what they are "brought for" ("a violation of the Constitution of the United States"). Subparagraph (A) says nothing about the law that creates the cause of action (*e.g.*, "*Bivens*" or a statute). By contrast, subparagraph (B), which preserves employee liability for federal statutory violations, imposes two conditions: (1) what the suit is "brought for" and (2) a cause of action emanating from a specified source in federal law. Hence, the plaintiff must sue for a violation of (1) "a statute of the United States" and (2) that statute must be one "under which such action against an individual is otherwise authorized." *Id.* § 2679(b)(2)(B).

The government's reading of subparagraph (A)'s constitutional exception improperly writes into that subparagraph a second condition that Congress included in subparagraph (B), but not (A). The government treats whether a suit is brought for a violation of the Constitution as turning on what law supplies the "right to relief." U.S. Mot. Dismiss 11, ECF No. 40. It insists that only a damages claim the Constitution itself supposedly creates—in practice, a *Bivens* claim—qualifies. *Id.*[5] The government is mistaken.

---

[5] The Supreme Court's cases sometimes speak of an "impl[ied]" right of action "directly from the Constitution." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 n.5 (2001). The government presumably

The government's theory asks a question subparagraph (A) does not. Subparagraphs (A) and (B) sit side by side in a single sentence, and (B) alone asks whether the law sued under also authorizes the suit. Yet the government reads subparagraph (A) as though it, too, reached only violations of law "under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2)(B). That departs from the text and amounts to a mirror image of the argument the Court rejected in *Smith*. There the government persuaded the Court not to imply a third exception to the Act's liability bar because Congress had written only two. *See* 499 U.S. at 167. And just as courts may not enlarge the exceptions Congress wrote, they may not shrink them either. *Cf. Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88 (2018) (explaining that when there is "no textual indication" that an "exemption[] should be construed narrowly[] there is no reason to give [it] anything other than a fair (rather than a narrow) interpretation." (cleaned up)). Congress must be taken at its word and the statutory omission presumed deliberate and given effect. *See Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 132-33 (1989); *Russello v. United States*, 464 U.S. 16, 23 (1983). Taken at its word, Congress asked one question in subparagraph (A): whether the suit is brought for a violation of the Constitution. It did not ask further what law created the cause of action, including whether the Constitution itself authorizes it.

The government itself has read section 2679(b)(2)'s two subparagraphs precisely this way. Opposing certiorari in *Sobitan*, the Acting Solicitor General responded to that plaintiff's argument that "statute" in subparagraph (B) encompassed "any instrument with binding legal force," including treaties, by pointing out that such a reading would sweep in the Constitution as well. And that, the government explained, would render subparagraph (A)'s constitutional exception superfluous. *See* Gov't Sobitan Brief at 9-10. The government further explained that if constitutional claims fell

---

relies on that notion for its theory that the Constitution itself is the source of the *Bivens* right of action.

within both subparagraphs, as Sobitan urged, subparagraph (A) would except them "*with no limitation*," while subparagraph (B) would do so "only to the extent the constitutional provision authorized an action." *Id.* at 10 n.3 (emphasis added). Like treaties, the Constitution is not a federal statute, and, as the Acting Solicitor General observed, claims under it are not encompassed by subparagraph (B). But constitutional claims *are* excepted from Westfall Act immunity in subparagraph (A). And they are preserved (in the government's own words) "with no limitation" in terms of the law authorizing the right of action. *See ibid.*

### B. Precedent and history confirm that the Westfall Act constitutional exception is not limited to *Bivens.*

Long before 1988, courts had held that federal employees may be sued under 42 U.S.C. § 1983 if they conspire with state officials to violate federal rights.[6] Here as well Congress is presumed to have known this law and legislated with it mind. *See Hall v. United States*, 566 U.S. 506, 516 (2012); *Merck*, 559 U.S. at 648. And as in other federal-employee liability contexts, "[the] availability of damages under § 1983 is particularly salient" here. *Tanzin v. Tanvir*, 592 U.S. 43, 50 (2020). The section 1983 conspiracy precedents, and section 1983 more generally, further refute the government's insistence that the Westfall Act's constitutional exception in subparagraph (A) is limited to *Bivens* suits. *See* U.S. Mot. Dismiss 11, ECF No. 40.

Consider first section 1983's nature and function. The Constitution rarely supplies its own right to sue for damages; its guarantees are ordinarily enforced through a cause of action that comes from elsewhere. Section 1983 provides perhaps the most familiar and instructive example. The Supreme Court has said repeatedly that section 1983 "is not itself a source of substantive rights," but

[6] *See, e.g.*, *Premachandra v. Mitts*, 753 F.2d 635, 641 n.7 (8th Cir. 1985); *Knights of Ku Klux Klan, Realm of La. v. E. Baton Rouge Par. Sch. Bd.*, 735 F.2d 895, 900 (5th Cir. 1984); *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980); *Kletschka v. Driver*, 411 F.2d 436, 448 (2d Cir. 1969).

provides merely "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). And those rights come from "the United States Constitution and federal statutes that [section 1983] describes." *Baker*, 443 U.S. at 144 n.3. Section 1983 thus "imposes liability for violations of rights protected by the Constitution," *id.* at 146, and "it remains true that one cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979).

Before the Westfall Act's passage, the Supreme Court had already described section 1983 in words similar to those Congress chose for subparagraph (A). Section 1983 serves, as *Chapman* explains, to "ensure that an individual had a cause of action for violations of the Constitution." 441 U.S. at 617. Less than a decade later, in the Westfall Act, Congress preserved actions "brought for a violation of the Constitution," 28 U.S.C. § 2679(b)(2)(A), and did so "with no limitation." Gov't Sobitan Brief at 10 n.3. The most natural inference is that Congress preserved employee constitutional liability without regard to the law creating the cause of action and did so whether the plaintiff sued under *Bivens*, the section 1983 conspiracy precedents, a future federal statute (a possibility *Bivens* and *Carlson* had identified, *see* 446 U.S. at 18-19), or even a state-created cause of action, a possibility Justice Black had suggested at the time of *Bivens* itself, *see* 403 U.S. at 428 (dissenting).

Section 1983 and the conspiracy precedents applying it refute the government's arguments in yet another way. After enactment of the Westfall Act, the government continued to defend its employees in section 1983 cases by relying on issues like qualified immunity and whether the employee conspired under color of state law. *See, e.g.*, *Economan v. Luttrull*, No. 24-3165, 2026 WL 82958, at *6 (7th Cir. Jan. 12, 2026); *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 871 (10th Cir. 2016). Amicus has found no case in which the government invoked the Westfall Act to

substitute itself for a federal employee sued for a constitutional violation under section 1983. The Westfall Act's broad general rule in subsection (b)(1) covers "any other civil action" against an employee. So a section 1983 conspiracy claim against a federal employee is viable only because an exception in subsection (b)(2) preserves it.

The "statutory" exception in subparagraph (B) cannot preserve section 1983 conspiracy claims. It covers only claims for a violation of a federal statute that creates a right or imposes a duty and authorizes suit for breaching it. *See Smith*, 499 U.S. at 175 (a statute falls outside subparagraph (B) because it "does not impose any duties of care . . . that could be violated"). And section 1983 is not such a federal statute; one cannot claim a "violation of § 1983." *Chapman*, 441 U.S. at 617. That leaves the Westfall Act's subparagraph (A). It applies and preserves section 1983 conspiracy suits because it covers constitutional violations and includes no limitation in terms of the law authorizing the plaintiff's suit. The persistence of section 1983 conspiracy suits and the government's practice of defending them without resort to the Westfall Act belie its claim that the Act's "constitutional exception" is limited to "*Bivens*-only."

### C. Descriptive References to *Bivens* in the Supreme Court's cases do not limit the Westfall Act constitutional exception.

To overcome the plain statutory text, the government leans heavily on statements in *Smith* and *Hui* describing subparagraph (A) as preserving *Bivens* actions. U.S. Mot. Dismiss 8-9, ECF No. 40. But that's like saying because "the Westfall Act[] accords federal employees absolute immunity from common-law tort claims," *Osborn v. Haley*, 549 U.S. 225, 229 (2007), it does not bar claims under federal treaties. And even the government would agree that's no way to read the statute's plain text. The same is true for the Court's "*Bivens*" references.

Neither *Smith* nor *Hui* said the Westfall Act's subparagraph (A) preserves *Bivens* actions only. Neither had occasion to consider the scope of subparagraph (A)'s constitutional exception or to apply it. Nor are the Court's statements in those cases the kind of dicta the First Circuit treats as

nearly binding. Federal appellate courts "are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings," especially where the dictum is "of recent vintage and not enfeebled by any subsequent statement." *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991). The *Smith* and *Hui* statements the government relies on fail that standard twice over. They were not "considered" because neither case analyzed subparagraph (A). And "[d]icta that does not analyze the relevant statutory provision cannot be said to have resolved the statute's meaning." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 645 (2022). *Smith* decided whether the Westfall Act immunizes an employee even when an FTCA exception bars recovery against the United States. *See* 499 U.S. at 161, 165-67. The only Westfall Act immunity exception the Court applied when answering that question was subparagraph (B). And that was to hold that the Gonzalez Act, 10 U.S.C. § 1089, does not trigger the immunity exception for statutory violations. *See Smith,* 499 U.S. at 174-75. *Hui* construed 42 U.S.C. § 233(a), not the Westfall Act. It held that section 233(a) bars *Bivens* claims against Public Health Service personnel. *See* 559 U.S. at 806. To the extent the government sees support in the Court's observation that the Westfall Act's subparagraph (A) preserves "*Bivens* claims," *Hui's* own additional reference to "an exception for constitutional violations" enfeebles it, 559 U.S. at 807. So does *Tanzin v. Tanvir* where the Court again described the Act as having "left open claims for constitutional violations and certain statutory violations" this time without mentioning *Bivens* at all. 592 U.S. at 49.

No less important, *Smith* and *Hui*'s methodology forecloses the government's reliance on their dicta. *Smith* refused to imply an exception Congress did not include in the text. *Hui* relied on plain statutory text. *See supra* Section I.A. The government's reliance on those cases' passing mention

of *Bivens* while ignoring the textual methodology that dictated their results is incompatible with the very precedents the government cites.[7]

### D. Recent lower court decisions do not support the government's theory.

The government says lower federal courts "have uniformly read the exception in § 2679(b)(2)(A) to apply only to *Bivens*." U.S. Mot. Dismiss 10, ECF No. 40. That is incorrect. Several of the decisions the government relies on respond to arguments invoking Judge Walker's concurrence in *Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023). Judge Walker sketched possible ways subparagraph (A) might come into play to preserve employee personal liability, including a common-law claim the plaintiff brings for the purpose of remedying a constitutional violation. *See id.* at 1016-17. And many of the decisions the government cites addressed only that possibility. *Rise*, *Black Lives Matter*, and *Pompy* all involved common-law tort claims, and each ruling in those cases rejected the idea that a plaintiff's subjective purpose in suing can bring a common-law claim within subparagraph (A)'s constitutional exception.[8] Those decisions did not pass on the "*Bivens*-only"

[7] The government's appeal to legislative history to support its "text-light approach to the statute," *Milner v. Department of the Navy*, 562 U.S. 562, 573 (2011), stands on even weaker ground. The government relies primarily on statements from individual members of Congress and a Department of Justice witness referring to "*Bivens* cases or constitutional tort claims" and "*Bivens* cases." *See* U.S. Mot. Dismiss 9 n.6, ECF No. 40. Such individual statements carry little weight even when legislative history properly might be considered. *See Regan v. Wald*, 468 U.S. 222, 237 (1984). The House Committee report, which the government also briefly mentions, refers alternately to "so-called constitutional torts," a "sharp distinction between common law torts and constitutional or *Bivens* torts," and "[a] constitutional tort action," as "a vehicle by which an individual may redress an alleged violation of one or more fundamental rights embraced in the Constitution." H.R. Rep. No. 700, 100th Cong., 2nd Sess.1988 at 6, *reprinted in* 1988 U.S.C.C.A.N. 5945, 5950. Hence, even if subparagraph (A) was ambiguous (and it is not), none of the legislative history the government cites would clearly and unambiguously support imposing a "*Bivens*-only" gloss on the statute. At best, the legislative history yields examples, "an illustration of a statute's operation in practice." *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 649 (1990). And an example "is just that;" statutory text "is not to be regarded as modified by examples set forth in the legislative history." *Ibid.*

[8] *Rise v. Bagshaw*, No. 1:24-cv-2388, 2025 WL 1380478, at *15 (D.D.C. May 13, 2025); *Black Lives Matter D.C. v. Barr*, No. 20-cv-1469, 2024 WL 3300158, at *5 (D.D.C. July 4, 2024); *Pompy v. Moore*, No. 19-10334, 2024 WL 845859, at *12 (E.D. Mich. Feb. 28, 2024), *aff'd sub nom. Pompy v. First Merchants Bank*, No. 24-1249, 2025 WL 2694801 (6th Cir. May 23, 2025).

reading the government proposes here because they rejected the "purposive" theory of common-law tort litigation the plaintiffs relied on.[9]

The decisions the government cites that arguably adopted a *Bivens*-only reading are few and thinly reasoned. Like the government here, they largely relied on *Smith* and *Hui*'s references to *Bivens* in connection with subparagraph (A) and not the statutory text. Indeed, the judge who decided two of those cases acknowledged that subparagraph (A)'s text "broadly suggests that any action brought for Constitutional violations may escape the FTCA's exclusivity." *Pearsons v. United States*, 723 F. Supp. 3d 825, 832 (C.D. Cal. 2024); *Mellein v. United States*, No. 2:23-CV-7970-RGK-MAR, 2024 WL 1601802, at *5 (C.D. Cal. Mar. 14, 2024); *see also Quiñonez v. United States*, No. 22-cv-03195-WHO, 2023 WL 5663156, at *3 (N.D. Cal. Aug. 30, 2023) (similar), *appeal pending*, No. 25-3386 (9th Cir.).

As explained above, the Supreme Court's "*Bivens*" references are at most dicta the Court itself has not used consistently, and they cannot bear the weight the lower court decisions put on them. *See supra* Section I.D. The Third Circuit's decision in *Henry v. Essex County*, 113 F.4th 355 (3d Cir. 2024), offers even less. The panel majority said without analysis that a New Jersey Civil Rights Act claim fit neither of the Westfall Act's exceptions and did so in a paragraph the third panel member declined to join because he was "not confident" in that conclusion. *Id.* at 364 & n.7.

* * *

[9] *Rise*, 2025 WL 1380478, at *15 ("The Court need not decide whether the prevailing *Bivens*-only approach or the cause-of-action interpretation is right because, as *in Black Lives Matter D.C.*, the plaintiffs' claims . . . could move forward only under the now-rejected purposive interpretation."); *Black Lives Matter*, 2024 WL 3300158, at *5 (the "Court need not decide whether the narrower or *Bivens*-only view is correct"); *Pompy*, 2024 WL 845859, at *12 (not considering narrower interpretation because a trespass suit is "what we have here").

Text, structure, and history all point the same way. Subparagraph (A) preserves suits "brought for a violation of the Constitution of the United States." Those words are not synonymous with "*Bivens*." The government's contrary argument is incorrect and should be rejected.

## II. A claim may be "brought for a violation of the Constitution" regardless of whether Congress or a state supplies the cause of action.

As a fallback, the government contends that even if the Westfall Act's constitutional exception is not limited to *Bivens* claims, Plaintiff's claims here are brought for a violation of the Maine Civil Rights Act, not the Constitution, and that he would have "no claim without the concomitant violation of the state statute." U.S. Mot. Dismiss 11, ECF No. 40. As Section I.B explains, that fallback theory fails when applied to any statute that, like 42 U.S.C. § 1983, supplies a cause of action only. The government nonetheless insists that the result changes when a state, rather than Congress, enacts the statute. As the government sees it, any federal constitutional claim is barred if state law supplies the cause of action—if, in the government's words, the claim "depends on state law." U.S. Mot. Dismiss 11, ECF No. 40. That test draws a line found nowhere in the statutory text.

A civil action is "brought for" the violation the plaintiff must prove to recover, not the law that supplies the remedy. Again section 1983 is the paradigm example. "[O]ne cannot go into court and claim a 'violation of § 1983.'" *Chapman*, 441 U.S. at 617. Nor is that some special gloss on section 1983. For example, section 4 of the Clayton Act supplies the private damages action for "anything forbidden in the antitrust laws." 15 U.S.C. § 15(a); *see* Clayton Act, ch. 323, § 4, 38 Stat. 731 (1914). Yet a treble-damages suit is brought for violating the Sherman Act or the Clayton Act's substantive provisions, not the Clayton Act's section 4, which merely provides the remedy.[10] In

[10] *See, e.g.*, *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 376 (1958) (asking, in a suit under sections 4 and 16 of the Clayton Act, not whether those sections were violated but whether the law allegedly

ordinary legal usage, then, an action is "brought for a violation of the Constitution" when the violation the plaintiff must prove is a constitutional one, regardless of what law supplies the remedy for that violation.

Westfall Act subparagraph (B) confirms this reading. It preserves actions "brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2)(B). On the government's reading of subparagraph (A), an action is "brought for a violation of" a law only if that law itself supplies the right to sue. But give those same words that meaning in subparagraph (B), and the rest of that subparagraph becomes redundant. Every action brought for a violation of a federal statute would already be one the statute authorizes, leaving the authorization clause nothing to do beyond its words "against an individual." The government's reading thus makes most of that clause superfluous, a result sound interpretation avoids. *See Corley v. United States*, 556 U.S. 303, 314 (2009).

Relying on the words' ordinary meaning avoids that problem. The phrase "brought for a violation of" identifies the law the plaintiff must prove was violated. It says nothing about who or what law authorized the suit. *See Smith*, 499 U.S. at 175 (asking whether the Gonzalez Act imposes duties "that could be violated"). The Westfall Act's subparagraph (B) includes a separate clause requiring that the statute the defendant violated also authorize the suit, but subparagraph (A) imposes no such requirement. The test amicus proposes here follows directly from the ordinary meaning of (A)'s plain language: An action is "brought for" a violation of the Constitution when pleading such a violation is necessary to stating a cause of action. *Cf. Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("[I]n order to state a cause of action under" section 1983, "the plaintiff must allege that

---

violated—section 3 of the Robinson-Patman Act—was among the "antitrust laws" whose "violation can lead to the private causes of action authorized by §§ 4 and 16").

some person has deprived him of a federal right."); *Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014) (similar).

A claim under a statute that, like section 1983, supplies nothing but a cause of action for federal constitutional violations fits within the Westfall Act's subparagraph (A) whether that statute authorizes suit for constitutional claims generally (like section 1983 itself) or only a category of constitutional violations (unreasonable searches and seizures, for example). This straightforward reading of the Westfall Act exception does not empower a state to undo the balance Congress struck. Every state common-law tort the Act displaced remains barred because none, as properly pleaded, is brought for a constitutional violation. Take the common law claim for false arrest as an example. Its elements come from state law. *See generally Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 n.6 (1st Cir. 1995) (citing Restatement (Second) Of Torts § 35, 118 cmt. b (1965)). The plaintiff recovers by proving the arrest was unlawful, and state law may forbid an arrest the Fourth Amendment permits. *See, e.g.*, *Virginia v. Moore*, 553 U.S. 164, 176 (2008). True, showing a constitutional violation may be one way to establish that an arrest was unlawful, but it is never something the plaintiff *must* show to state a common-law false arrest claim. Because the plaintiff can recover without proving a constitutional violation, the common-law claim is not "brought for" one. Malicious prosecution is another example. A sufficient showing of the tort's common-law elements is different from pleading and proving a constitutional violation. *See, e.g., Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). Quite simply, then, pleading a common-law tort is not a proxy for alleging a constitutional violation. *See Baker*, 443 U.S. at 142-43; *cf. Drumgold v. Callahan*, 707 F.3d 28, 53 (1st Cir. 2013) ("It is our duty to remain vigilant in policing the boundaries separating tort law from constitutional law") (cleaned up). And that distinction is where the Department of Justice itself drew the line in 1988, telling Congress that the proposed Westfall Act bill "would apply only to cases

alleging injury caused by ordinary common law tortious conduct." U.S. Mot. Dismiss 9 n.6, ECF No. 40. (quoting Deputy Asst. Att'y Gen. Willmore) (cleaned up).

For a claim under a statute that, like section 1983, or the MCRA here, remedies federal constitutional violations, pleading and proving a constitutional violation is necessary. At the same time, a claim under a statute that also remedies state constitutional violations falls outside of subparagraph (A) (and remains subject to Westfall Act immunity) if the claim itself rests on a state constitutional violation only. A state therefore cannot use subparagraph (A) to expose federal employees to liability for state constitutional violations.

**III. Plaintiff's MCRA claims are brought for violations of the Constitution.**

The Maine Civil Rights Act is titled "Violations of constitutional rights; civil actions by aggrieved persons." 5 M.R.S. § 4682 (2026). When applied to government employees, it operates like section 1983. As this Court has observed, "Maine caselaw analyzes the statute as if it were identical to 42 U.S.C. § 1983." *Nillson-Borrill v. Burnheimer*, 505 F. Supp. 2d 180, 181 (D. Me. 2007). The Act was patterned on section 1983, *see Doe I v. Williams*, 2013 ME 24, ¶ 72, 61 A.3d 718, 739 (2013), enough so that the First Circuit has said the disposition of a section 1983 claim against a government employee "also controls a claim under the" Maine Act. *Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007). It follows that an MCRA claim alleging a federal constitutional violation fits comfortably within the Westfall Act constitutional exception.

The Westfall Act's subparagraph (A) asks whether a "civil action against an employee of the Government" is "brought for a violation of the Constitution." 28 U.S.C. § 2679(b)(2), (b)(2)(A). Accordingly, the Act's operation in this case turns on what violation the claim is "brought for."[11] A

[11] The government itself applies the Westfall Act claim by claim. For example, it substituted the United States here "with respect to "Plaintiff's state-law claims," leaving the *Bivens* claims against the officers in place. U.S. Notice at 1, ECF No. 38. *See also Cholewa v. United States*, No. 25-1465, 2026 WL 1694860, at *10-*11 (6th Cir. June 11, 2026) (holding that Westfall Act certification is properly

trespass suit, even if filed to vindicate the Fourth Amendment, would be barred because a constitutional violation is not an element of trespass. *See Oliver v. United States*, 466 U.S. 170, 183 & n.15 (1984). On the other hand, a claim is "brought for a violation of the Constitution" when, as pleaded, the plaintiff cannot recover without proving one. *See supra* Part II. Under this "cause-of-action" reading, a claim qualifies under the Westfall Act exception "if a constitutional violation is part of the plaintiff's cause of action." *Buchanan*, 71 F.4th at 1016 (Walker, J., concurring).

Under this test, Plaintiff's MCRA claims here fit in subparagraph (A) and substitution of the government is improper. Each claim, as pleaded, rests on a Fourth or Fifth Amendment violation. *See* First Am. Compl. 20 ¶¶ 131-32, 21 ¶¶ 137-38, 22 ¶¶ 144-45, 24 ¶¶ 154-55, 25 ¶¶ 162-63, ECF No. 33. Plaintiff therefore cannot recover on them without proving a violation of the federal Constitution. The government's own filings support that conclusion. The notice of substitution describes the MCRA claims as alleging that officers stopped the plaintiff "without reasonable suspicion," arrested him "without probable cause," targeted him "based on his race," used "unreasonable force," and "unreasonably prolonged his detention." U.S. Not. 1 ¶ 1, ECF No. 38. Each of those describes either a Fourth or Fifth Amendment violation. The dismissal motion further acknowledges that the MCRA claims are "based on the same allegedly unconstitutional conduct underlying his *Bivens* claims." U.S. Mot. Dismiss 1, ECF No. 40. So while the cause of actions are conferred by state law, the law violated is the federal Constitution. And that is all subparagraph (A) cares about.

The government also argues that Plaintiff would have "no claim without the concomitant violation of the state statute," U.S. Mot. Dismiss 11, ECF No. 40, and that the Maine Act protects state rights too. *See id.* at 11 & n.8. Neither consideration changes what the MCRA claims are

---

determined claim-by-claim); *cf. Lyons v. Brown*, 158 F.3d 605, 607 (1st Cir. 1998) (holding that certification properly can be made for discrete instances of employee conduct).

brought for. The question under Westfall Act subparagraph (A) is not whether a claim has requirements in addition to a constitutional violation; it's whether the plaintiff can recover without pleading and proving the violation. That the Maine Civil Rights Act has requirements of its own (such as the "force," "violence," or "threats" requirements, *see* 5 M.R.S.A. § 4682(1–A)) makes it no different from any other cause of action. Many causes of action have elements beyond the substantive law violation they remedy. Constitutional suits under section 1983 and even *Bivens* are no exception. *See Manuel v. City of Joliet*, Ill., 580 U.S. 357, 369-70 (2017); *see, e.g., Thompson v. Clark*, 596 U.S. 36, 39 (2022) (Section 1983 plaintiff suing for Fourth Amendment violation in connection with criminal charges "must demonstrate, among other things, that he obtained a favorable termination of the underlying criminal prosecution.") (cleaned up); *Hartman v. Moore*, 547 U.S. 250, 252 (2006) (*Bivens* action holding that a plaintiff alleging retaliatory prosecution in violation of the First Amendment must allege and prove lack of probable cause for the charges). Yet no one disputes that a section 1983 or *Bivens* suit brought for an unreasonable seizure, for example, is brought for a violation of the Constitution.

That the MCRA could allow plaintiffs to also enforce Maine-law rights does not change what the plaintiff's claims are brought for in this case. He invokes no such Maine rights. And to the extent that the government's objection is that a state, rather than Congress, created the cause of action, that is a "source-of-the-cause-of-action" test that the statutory text forecloses. *See supra* Parts I-II.[12]

---

[12] The government suggests that because MCRA claims must be filed in the Superior Court, they are brought for a violation of state law. U.S. Mot. Dismiss 11 n.7, ECF No. 40. But 5 M.R.S. § 4682(2) (2026) shows only where the plaintiff must sue, not what the suit is brought for. "State courts are adequate forums for the vindication of federal rights" and the principle of state-court competence applies to "claimed violations of constitutional, as well as statutory, rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). Hence a section 1983 suit in state court is no less a suit brought for a federal constitutional violation. The same is true for Plaintiff's MCRA claims.

Nor do the Maine Act's "force," "violence," or "threats" requirements change the analysis. The MCRA does not make force, violence, or threats actionable in themselves. Handcuffing a suspect during a lawful arrest, for example, does not per se violate a constitutional right. The plaintiff can recover only by proving the stop, arrest, or force was itself unconstitutional, and then only if force, violence, or threat was the means. The additional requirements narrow the range of constitutional violations the Act reaches, but they do not authorize a plaintiff's recovery without pleading and proving a constitutional violation. As *Bivens* itself shows, a remedy that reaches only some constitutional violations is still a remedy for constitutional violations. Accordingly, the Maine Act's particular features do not change that Plaintiff's constitutional claims here fall within the Westfall Act's constitutional exception.[13]

## CONCLUSION

The Court should reject the government's *Bivens*-only interpretation of the Westfall Act's constitutional exception; hold that a claim is brought for a violation of the Constitution when, as pleaded, the plaintiff cannot recover on it without proving one; and reject the United States's attempt to substitute itself on the MCRA claims.

Dated: October 27, 2026

*/s/ Melissa A. Hewey*
Melissa A. Hewey
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101
(207) 253-0528
mhewey@dwmlaw.com

[13] Nor does preserving these claims deprive the individual defendants of qualified immunity. Maine courts apply section 1983's qualified-immunity analysis to MCRA claims, *see Jenness v. Nickerson*, 637 A.2d 1152, 1159 (Me. 1994). And that is the same qualified-immunity defense federal officers have under *Bivens*. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999).